UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 18-CV-63130-RUIZ/STRAUSS
19-CV-61881

OHIO STATE TROOPERS
ASSOCIATION, INC., *et al.*,

      Plaintiffs,

v.

POINT BLANK ENTERPRISES, INC.,

      Defendant.

_____/

MIGUEL PORRAS, individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

POINT BLANK ENTERPRISES, INC.,

      Defendant.

_____/

## OMNIBUS ORDER ON DE 142, 145, AND 147

THE MATTER came before the Court upon the following motions: (1) Plaintiffs'
Expedited Motion to Strike the Expert Report of Sarah Butler as Untimely and to Exclude Her
Testimony and Incorporated Memorandum of Law [DE 142][1] ("Butler Motion"); (2) Defendant
Point Blank Enterprises, Inc.'s Motion to Exclude the Expert Reports of Christine Cole, Douglas
Hermann, and D.C. Sharp [DE 145] ("Defendant's *Daubert* Motion"); and (3) Plaintiffs' Omnibus
Motion to Exclude Defendant Point Blank Enterprises' Class Certification Experts and Expert

---

[1] Unless specifically noted, all "DE" references are to docket entries in Case No. 18-cv-63130.

Opinions, Reports and Testimony and Memorandum of Law in Support [DE 147] ("Plaintiffs' *Daubert* Motion"). The Butler Motion is before the Court on referral [DE 83] from the District Court for disposition of all discovery matters. Defendant's *Daubert* Motion and Plaintiffs' *Daubert* Motion were referred to the Court pursuant to the District Court's Order Referring Motions to Magistrate Judge [DE 151]. The Court has reviewed all three motions and the responses and replies thereto, as well as all of the expert reports at issue. The Court also held a hearing (for approximately five hours) on the motions on February 26, 2020.[2]

For the reasons discussed herein, the Butler Motion [DE 142] is **GRANTED IN PART and DENIED IN PART**, Defendant's *Daubert* Motion [DE 145] is **DENIED**, and Plaintiffs' *Daubert* Motion [DE 147] is **GRANTED IN PART and DENIED IN PART**.[3]

## I.     BACKGROUND[4]

This is a products liability case (or, rather, two consolidated cases) in which Plaintiffs seek certification of certain classes. To paint a very simple picture in elementary terms, Defendant makes bulletproof vests. Many police officers and others buy those bulletproof vests. End users—the individuals who ultimately wear the vests—often purchase their vests from distributors and not directly from Defendant. The vests that Defendant manufactures include concealable vests. Defendant manufactures some models of concealable vests with a Self-Suspending Ballistic

---

[2] At the hearing, the Court asked the parties to provide a demonstration with certain bulletproof vests and body armor materials. This was done solely for the Court to be able to visualize some of the products at issue. The demonstration had no impact on the Court's rulings set forth herein.

[3] Defendant's *Daubert* Motion [DE 145] and Plaintiffs' *Daubert* Motion [DE 147] are moot in part. Defendant's *Daubert* Motion was withdrawn as to experts Christine Cole and Douglas Hermann, and Plaintiffs' *Daubert* Motion was withdrawn as to experts Christian Page and Zdravko Salipur. *See* DE 195.

[4] Plaintiffs and Defendant may describe some of the facts contained herein differently from one another. Nevertheless, those differences have not impacted the Court's rulings herein in any way.

System ("SSBS"). It also manufactures other models of concealable vests that are more commonly referred to as traditional vests.

Both SSBS vests and traditional vests have two main components—ballistic panels and a carrier. The ballistic panels are designed to stop bullets, and the carriers hold the ballistic panels. With traditional vests, the carrier is a single piece. The front and back of the carrier are connected by shoulder straps sewn into the vest. On the other hand, the front and back of SSBS vests are two separate pieces. Shoulder straps—that are not sewn into the panels or carrier—are then used to connect the front to the back.

It is Defendant's SSBS vests that are at issue in these putative class action cases. Plaintiffs allege that the SSBS vests manufactured by Defendant are defective (from the time of purchase) and that they can, and have, fallen apart or fallen down while officers are in the line of duty. Plaintiffs, however, do not contend that the ballistic panels themselves are defective.[5]

The plaintiffs in the first putative class action case (18-cv-63130; the "2018 Case") bring breach of warranty claims in Counts I and II and a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") in Count III.[6] In the second putative class action case (19-cv-61881; the "2019 Case"),[7] a single plaintiff brings breach of warranty claims in Counts I and II, a California False Advertising Law ("FAL") claim in Count III, a California Unfair Competition Law ("UCL") claim in Count IV, and a fraudulent concealment claim in Count V. In Plaintiffs'

---

[5] The parties dispute whether the shoulder straps for SSBS vests connect to the carrier or to the ballistic panels themselves. Whatever the case may be, it is not material to this Order.

[6] Count III was previously dismissed in a limited manner that does not affect the motions at issue in this Order. Specifically, the claims of the Ohio State Troopers Association and the International Union of Police Associations on behalf of the putative FDUTPA class were dismissed without prejudice for lack of standing. DE 53 at pp. 21-22.

[7] In certain instances below, this Order refers to "this case." Unless stated otherwise, references to "this case" encompass both the 2018 Case and the 2019 Case.

class certification motion [DE 159], the plaintiffs in the 2018 Case seek certification of a FDUTPA class and a warranty class. The plaintiff in the 2019 Case seeks certification of a California warranty class and a California UCL/FAL class concerning the UCL, FAL, and fraudulent concealment claims.

## II.  LEGAL STANDARDS

### A. *DAUBERT*

"Under [Federal] Rule [of Evidence] 702 and *Daubert*, district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The court's inquiry, however, is a flexible one. *Daubert*, 509 U.S. at 594. For an expert's testimony to be admissible, a party must demonstrate that the following elements are satisfied (by a preponderance of the evidence):

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink*, 400 F. 3d at 1291-92 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). While an analysis of the foregoing elements may necessarily entail some overlap, the concepts of qualification (first element), reliability (second element), and fit or helpfulness (third element)[8] are nonetheless distinct concepts that should not be conflated. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

---

[8] The third element "goes primarily to relevance." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016) (quoting *Daubert*, 509 U.S. at 591).

In exercising its gatekeeping role, a court should not "make ultimate conclusions as to the persuasiveness of the proffered evidence." *Id.* Instead, a court should analyze the methodology of the expert at issue. *Id. See also Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). That is because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In other words, the gatekeeper role of the court "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).

## B. REBUTTAL EXPERTS

Expert disclosures, including the disclosure of a rebuttal expert, must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D); *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019). An expert may be used for rebuttal if the expert offers evidence that is "intended solely to contradict or rebut evidence on the *same subject matter* identified by" the affirmative expert of another party. *Burger King Corp. v. Berry*, No. 18-20435-CIV, 2019 WL 571483, at *2 (S.D. Fla. Jan. 8, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)) (emphasis added). A proposed rebuttal expert satisfies this standard as long as the information provided by the rebuttal expert repels the affirmative expert testimony of the other party. *Papasan v. Dometic Corp.*, No. 16-22482-CIV, 2019 WL 7376716, at *3 (S.D. Fla. Apr. 10, 2019). Moreover, courts construe the term "same subject matter" broadly and have discretion when determining whether a rebuttal expert in fact addresses the same subject matter as an affirmative expert. *Berry*, 2019 WL 571483, at *2 (citations omitted). *See also Papasan*, 2019 WL 7376716, at *3 ("Courts have broad discretion in deciding what constitutes proper rebuttal evidence."

(citation omitted)).  Further, it is not necessary for the training and expertise of a rebuttal expert to be identical to that of the expert he or she is rebutting.  *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 3583002, at *2, *6 (S.D. Fla. July 26, 2018).

If a party fails to disclose an expert in accordance with Rule 26, the party may not use the expert unless the Rule 26 violation is harmless or the party demonstrates substantial justification for the violation.  *Guevara*, 920 F.3d at 718 (citing Fed. R. Civ. P. 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008)).  *See also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  However, other appropriate sanctions may be imposed, in addition to, or in lieu of, exclusion of the expert, upon motion and an opportunity to be heard.  Fed. R. Civ. P. 37(c)(1)(C).  Rule 37 applies when an expert who should have been designated as an affirmative expert is instead designated as a rebuttal expert (after the affirmative expert deadline).  *See Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. 10-24310-CIV, 2011 WL 6372198, at *3 (S.D. Fla. Dec. 20, 2011).  If the non-disclosing party raises substantial justification to attempt to excuse a Rule 26 violation, that party has the burden of establishing substantial justification.  *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

## III.    DEFENDANT'S *DAUBERT* MOTION [DE 145]

Defendant's *Daubert* Motion seeks to exclude the expert report and testimony of D.C. Sharp ("Sharp") in connection with the District Court's consideration of the parties' class

certification motions.[9] Sharp is a proposed damages expert who has opined on whether any method exists to calculate class-wide damages. He concluded that such a method exists. Sharp has prepared both an affirmative expert report and a reply.

As the dispute in this case is over whether the carrier and/or shoulder strap portion of Defendant's SSBS vests are defective, as opposed to whether the more expensive ballistic panels are defective, Sharp began his analysis by using the cost of a different carrier, the Python carrier, as a proxy to attempt to calculate class-wide damages.[10] Sharp noted that Defendant's marketing materials indicate that SSBS ballistic panels are compatible with Python carriers. In other words, based upon the compatibility representations in Defendant's marketing materials, the ballistic panels can be removed from an allegedly defective SSBS carrier and placed into a Python carrier. Sharp therefore determined that the cost of a Python carrier, plus a price premium to account for the higher cost of upgraded/higher-end SSBS vests, would make Plaintiffs whole. That is because the substitution of a Python carrier for the SSBS carrier would allegedly fix the alleged SSBS vest defect, essentially providing a purchaser of an SSBS vest a conforming, defect-free vest (albeit, a vest that would then have a single-piece carrier) without the expense of replacing the ballistic panels.

For those who purchased an SSBS vest without upgrades, Sharp determined that they should be awarded the cost of a Python carrier. However, as mentioned above, Sharp determined that those who purchased upgrades or higher-end vests should be awarded the Python cost plus a

---

[9] Defendant's *Daubert* Motion also sought to exclude experts Christine Cole and Douglas Hermann. As mentioned above, however, Defendant has since withdrawn its request to exclude Cole and Hermann. *See* DE 195.

[10] The Python carrier is a traditional concealable carrier. As discussed above, unlike SSBS carriers, traditional carriers like the Python come in a single piece with sewn in shoulder straps.

premium. To attempt to determine the amount paid by end users, Sharp had to extrapolate certain data and perform various estimates. After doing so, Sharp calculated the amount of damages for each proposed class.

Defendant does not challenge Sharp's qualifications. However, Defendant does challenge the reliability and fit of Sharp's methodology and conclusions. Although Defendant seems to conflate reliability and fit to a certain degree (Plaintiffs do the same), it is evident that most of Defendant's arguments pertain to fit/relevance. Regardless, for the reasons discussed herein, Defendant's arguments ultimately go to the weight that the factfinder may choose to afford to Sharp's opinions and not to the admissibility of Sharp's opinions.

## A. RELIABILITY

Although Defendant raises some potentially valid criticisms of Sharp's methodology, the Court does not find that Sharp's methodology is so unreliable to warrant exclusion. *Accord Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) ("Quelette's method was not so unreliable that the Court can rule as a matter of law that the jury should not hear his opinion."); *Leblanc v. Coastal Mech. Servs., LLC*, No. 04-80611-CIV, 2005 WL 8156075, at *2 (S.D. Fla. Sept. 15, 2005) ("[T]he Court cannot find that the information relied upon by Dr. Leporowski to form her opinion so unreliable and lacking in probative weight so as to warrant the wholesale exclusion of her testimony.").

On the issue of reliability, Defendant's primary argument is that Sharp's methodology is unreliable because Sharp's calculation of damages is based on the estimated price of a non-SSBS carrier—the Python carrier—that Plaintiffs did not want or purchase. More importantly for purposes of evaluating Sharp's methodology, however, Defendant argues that "Sharp has no basis

for using [Defendant's] Python carrier as a comparable product or as a reference point for damages." DE 145 at p. 28.

Ideally, Sharp should have considered alternative ways to calculate damages. It is unclear from his report whether he did so. Nevertheless, contrary to Defendant's contention, Sharp had a reasonable basis for using the Python carrier to attempt to measure damages. Defendant's own marketing materials specifically state that the Python carrier is compatible with at least certain SSBS ballistic panels. And Sharp cited to allegations in the Complaint to support his assumption, for purposes of calculating damages, that repairing SSBS carriers was not feasible. Therefore, Sharp used the Python carrier—in his words, as a proxy—to attempt to determine the cost necessary to provide a working carrier for SSBS ballistic panels. Stated differently, because Sharp assumed no feasible repair could be made to SSBS carriers, Sharp substituted Python carriers (or, rather, their cost) for the SSBS carriers to effectively repair the SSBS vest by swapping an allegedly defective carrier for a functioning carrier.

Sharp's analysis fails to consider, among other things, the fact that a working SSBS carrier may have a different value (perhaps substantially different) than a Python carrier. In other words, it is not clear that the use of the Python was the best way to monetize the diminution in value caused by the alleged SSBS carrier defect. At a minimum, when selecting the Python carrier as an alternative, Sharp should have considered other comparable options to ensure that the Python carrier provided the best baseline. But Sharp's potential failure to do so under the circumstances merely renders his report and opinions imperfect. "An expert's method need not be perfect, nor need he apply it perfectly." *Banta Props.*, 2011 WL 13096149, at *4 (citing *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-CIV, 2011 WL 2295269, at *5-6 (S.D. Fla. June 8, 2011)). In any event, because Sharp had a reasonable basis for using the Python carrier as

a baseline to measure damages, his methodology at least meets the "sufficiently reliable" threshold.[11]  Therefore, Sharp's report and testimony will not be excluded as unreliable.

## B. FIT

As to fit, Defendant first contends that Sharp fails to measure Plaintiffs' alleged theory of damages.  *See* DE 145 at p. 25.  By way of background, in the Complaints in the 2018 Case and the 2019 Case, Plaintiffs allege that "class members have been damaged in the amount of the purchase prices of their vests and have not received the benefit of the bargain."  *E.g.*, DE 1 at ¶ 178.[12]  Plaintiffs, however, do not allege in the Complaints that their damages are equal to the value of their carriers.  Consequently, Defendant argues that Sharp has failed to measure the theory of damages pled in the Complaints.  In making its argument, Defendant relies on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

In *Comcast*, the Supreme Court stated that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory."  *Id.* at 35.  "But *Comcast* simply requires that 'any model supporting a plaintiff's damages case must be consistent with its *liability case.*'"  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (quoting *Comcast*, 569 U.S. at 35) (emphasis added).  Thus, *Comcast* does not prohibit Plaintiffs from seeking a different (and lesser) measure of damages than that sought in the Complaints provided that the damages sought are consistent with Plaintiffs' theory(ies) of liability.

---

[11] Defendant also argues that Sharp's methodology is unreliable because it overcompensates class members for several different reasons.  *See* DE 145 at pp. 28-29.  But Defendant's arguments on this topic go to weight, not admissibility.

[12] Though this specific reference is only to an allegation in one count of the Complaint in the 2018 Case, similar references are made in both Complaints including in the general allegations thereof.

Second, Defendant contends that Sharp's damages calculation does not measure damages that are available for any of the specific legal claims brought by Plaintiffs. *See* DE 145 at pp. 25-27. Unlike Defendant's first "fit" argument, this argument is a more facially legitimate *Comcast*-based argument inasmuch as it pertains to whether Sharp's theory of damages can apply to any of Plaintiffs' claims brought in the subject Complaints. To avoid exclusion on *Daubert* grounds, it is only necessary for Plaintiffs to demonstrate that the measure of damages set forth in Sharp's report can apply to at least one of Plaintiffs' claims. That is because Sharp's testimony is admissible even if it may only assist the trier of fact with determining "*a fact in issue*" (provided the other *Daubert* requirements are satisfied). *Rink*, 400 F. 3d at 1292 (emphasis added).

Defendant specifically addresses the measure of damages available for breach of warranty claims, the FDUTPA claim, and the UCL/FAL claims (effectively, the categories of claims underlying the three classes for which Plaintiffs seek certification). As Defendant notes, a plaintiff that prevails on a breach of warranty claim under California or Ohio law may recover the difference in value between the product that was warranted and the product the plaintiff received. *See Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019) ("California Commercial Code section 2714 provides that '[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.'" (quoting Cal. Com. Code § 2714(2))); *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2012 WL 1201013, at *1 (N.D. Ohio Apr. 10, 2012) ("[U]nder Ohio law, '[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.'" (quoting Ohio Rev.

Code § 1302.88)).  Nevertheless, as both parties also note, breach of warranty damages include "the cost of repairs necessary to make the goods conform" when goods have been accepted. *Victorino v. FCA US LLC*, 326 F.R.D. 282, 303 (S.D. Cal. 2018) (quoting Cal. Civ.  Code § 1794(b)).

The measure of actual damages available for a FDUTPA claim, however, is only similar to the first warranty measure.  Specifically, a plaintiff that prevails on a FDUTPA claim may recover actual damages in addition to attorneys' fees and costs.  *Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 472 (11th Cir. 2015) (citing § 501.211(2), Fla. Stat.).

> Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.

*Id.* (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).  However, actual damages under FDUTPA "do not include consequential damages, such as repair damages." *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008).

With respect to UCL/FAL damages, the parties correctly note that a plaintiff who is entitled to monetary damages in connection with UCL/FAL claims is awarded restitution, which is typically measured by the difference between what the plaintiff paid and the value of what the plaintiff received.  *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("Restitution is the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." (citation and internal quotation marks omitted)); *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009) ("The remedies available in a UCL or FAL action are limited to injunctive relief and restitution. . . . The difference between what the

plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." (citation omitted)).

Notwithstanding the measure of damages available for the claims of each putative class, Sharp does not measure the value of the product that was warranted (for breach of warranty purposes), or similarly, the value of the product that should have been delivered (for FDUTPA purposes). Sharp also does not measure the value of the product that was in fact delivered/received. Moreover, he does not measure what was paid and he does not calculate restitution (for purposes of the UCL/FAL claims). But Sharp does measure what a factfinder *could* find to constitute "the cost of repairs necessary to make the goods conform." Whether the substitution of a working Python carrier for the allegedly defective SSBS carrier may be considered a "repair" (or whether it completely changes the product) is something for a factfinder to decide. And if a factfinder were to determine that the aforementioned change in carrier qualifies as a repair to the product necessary to make it conform, then Sharp's opinions may aid the factfinder in measuring breach of warranty damages. Although Sharp's opinions may not be helpful for calculating FDUTPA damages or UCL/FAL damages,[13] that does not change the fact that his report and testimony may still be helpful with determining "*a* fact in issue." Therefore, the Court will not exclude Sharp on the

---

[13] As mentioned above, restitution is the measure of monetary damages that may be available for UCL/FAL claims, and the concept of restitution (restoring out-of-pocket loss) is seemingly inconsistent with the concept of benefit of the bargain damages (putting one in the position he or she expected to be in as a result of the bargain). Ultimately, it is not clear that Plaintiffs can recover the damages Sharp proposes for their UCL/FAL claims. And while benefit of the bargain damages may be available under California's Consumers Legal Remedies Act ("CLRA"), *see Nguyen*, 932 F.3d at 818, available remedies under the UCL and FAL are more limited. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) ("Under the UCL and FAL a plaintiff may only recover restitution and injunctive relief, whereas a plaintiff's recovery under the CLRA is not so limited.").

basis that he fails to calculate a measure of damages that may be available for *any* of the claims at issue.

Third, Defendant argues Sharp should be excluded because he does nothing more than perform basic arithmetic that the average lay person is capable of understanding. *See* DE 145 at pp. 29-30. Stated differently, Defendant essentially argues Sharp's opinions are not helpful to the factfinder because he is not applying any specialized expertise or knowledge. Defendant cites a single case, *Geter v. Galardi S. Enters., Inc.*, No. 14-21896-CIV, 2015 WL 2155721 (S.D. Fla. May 7, 2015), in support of this argument in its *Daubert* Motion. *Geter* was a case brought under the Fair Labor Standards Act over alleged unpaid wages. *Id.* at *1. In *Geter*, the proposed damages expert himself acknowledged that his calculations did not require the application of any scientific, technical, or specialized expertise. *Id.* at *2, *3. Therefore, the court found that his testimony should be excluded under *Daubert* because it would not assist the trier of fact. *Id.* at *3.[14]

The calculations and extrapolation of data in this case, however, are far more complex.[15] For instance, in conjunction with his analysis, Sharp approximated the ultimate costs of vests sold through distributors and scoured through a myriad of data sets. He did far more than merely multiply some numbers. Although at least some lay people are likely capable of performing the same analysis and calculations, the work undertaken by Sharp is undoubtedly beyond the understanding of the *average* lay person. Moreover, his expertise should enable him to assist the

---

[14] The proposed expert was permitted to testify regarding his calculations as a lay witness. *See id.* at *4.

[15] In addition to the *Geter* case cited in Defendant's *Daubert* Motion, Defendant cites a case in its Reply [DE 183] on this issue. *See Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 11233065 (S.D. Fla. May 7, 2015). The calculations in *Bowe*, however, were also simpler than Sharp's calculations. *See id.* at *4.

trier of fact with understanding the work that he performed and the conclusions that he reached. Therefore, the Court will not exclude Sharp on this ground either.

## IV.    **BUTLER MOTION [DE 142]**

Plaintiffs seek to exclude the expert report and testimony of Defendant's expert, Sarah Butler ("Butler"), arguing that Defendant's disclosure of Butler was untimely. Defendant disclosed Butler as a rebuttal expert to Sharp. According to Butler, she was tasked with "evaluat[ing] Plaintiffs' contentions that Plaintiffs and all putative class members would not have purchased their PBE vests had information about the alleged SSBS defect been disclosed, and that, as a result, all class members suffered harm and are entitled to damages, as reflected in the *Sharp Report*." DE 142-1 at ¶ 8. Butler conducted a survey to guide her evaluation.

Plaintiffs argue that Butler should be excluded because she tendered an affirmative expert report under the guise of a rebuttal expert report after the deadline to provide affirmative expert reports.[16] In other words, Plaintiffs contend that Butler's expert report does not specifically rebut any assertions of Sharp, the expert that Butler is purportedly rebutting. Consequently, Plaintiffs argue that Butler's report was untimely.

Defendant disclosed Butler as a rebuttal expert on January 17, 2020, the deadline to disclose rebuttal experts for class certification (*see* DE 127). The deadline to disclose affirmative experts for class certification was December 30, 2019 (*see* DE 98). Thus, if Defendant was required to disclose Butler as an affirmative expert, her report was untimely. If Butler is a pure rebuttal expert, however, Defendant's disclosure of Butler was timely. Stated differently, Butler's

---

[16] To the extent Butler is not stricken or excluded pursuant to the Butler Motion, Plaintiffs also seek to exclude Butler on *Daubert* grounds. *See* DE 147. Plaintiffs' *Daubert* arguments regarding Butler are discussed in Part V.A below.

report was only untimely to the extent she needed to be disclosed as an affirmative expert (to the extent she does not rebut Sharp).

## A. BUTLER REBUTS SHARP

The Court finds that Butler rebuts Sharp given the broad manner in which courts construe the term "same subject matter." Therefore, Butler will not be excluded (with one limited exception discussed in Part IV.B below). The Court has considered the arguments raised by both parties. Those that merit discussion will be addressed herein.

Plaintiffs argue that, while Sharp addresses the subject matter of damages, Butler does not. Relatedly, Plaintiffs argue that Butler does not rebut Sharp's calculations or methodology. Defendant counters that Butler refutes various assumptions underlying Sharp's report. Specifically, it argues that Butler repels Sharp's assumption that putative class members have been harmed in a uniform manner and Sharp's assumption that his proposed Python remedy is appropriate. *See* DE 153 at p. 12. As subsets of the first assumption (uniform harm), Defendant argues that Butler rebuts Sharp's assumption that a disclosure regarding the alleged defect would have caused putative class members to forego purchasing their SSBS vests, and that she also rebuts Sharp's assumption that putative class members suffered harm merely by purchasing their SSBS vests. *See id.*

The Court agrees with Defendant that Butler rebuts these assumptions and, consequently, Sharp's method of calculating damages for the proposed classes. Other courts have found that it may be permissible to utilize a rebuttal expert to rebut assumptions of another expert. *See, e.g.*, *Slicex, Inc. v. Aeroflex Colo. Springs, Inc.*, No. 2:04-CV-615 TS, 2006 WL 1932344, at *3 (D. Utah July 11, 2006) ("[T]he Court finds that Wagner has specialized knowledge and that he may be allowed to testify as a rebuttal expert witness in order to rebut the methodology and the

assumptions used by Plaintiff's expert."). *See also Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2019 WL 5448206, at \*22 (N.D. Ga. Oct. 3, 2019) (finding that rebuttal expert attacked an assumption underlying affirmative expert's report and, consequently, declining to exclude rebuttal expert).

With respect to the disclosure assumption—that putative class members would not have purchased their SSBS vests if a disclosure regarding the alleged defect had been made—this issue is within the subject matter of Sharp's report even if not readily apparent at the outset. Plaintiffs acknowledge as much when they argue in their opposition to Defendant's *Daubert* Motion that "Sharp's approach is reasonable and is *directly tied to* Plaintiffs' allegations of injury stemming from the purchase of SSBS Vests and *[Defendant's] failure to disclose* the defective SSBS." DE 174 at p. 15 (emphasis added). Ultimately, Defendant is indeed walking a tightrope as Butler's report comes dangerously close to venturing beyond the subject matter of Sharp's report, but the scope of Butler's report is proper rebuttal with the one limited affirmative use exception discussed below in the next section.

Additionally, the Court rejects Plaintiffs' argument that Butler's use of survey evidence alone amounts to impermissibly raising new facts, evidence, and arguments. Plaintiffs overgeneralize the concept that rebuttal experts "cannot be used to advance *new arguments or new evidence*." *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2016 WL 8793317, at \*3 (S.D. Fla. Jan. 7, 2016) (citations omitted). To the contrary, rebuttal experts "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 396 (M.D. Fla. 2018) (citation omitted). *See also Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 11–08120 JVS(FMOx), 2012 WL 12930456, at \*7 (C.D. Cal. Nov. 9, 2012) ("[N]othing constrains an expert

preparing a rebuttal report from taking a different approach than the initial expert, from employing a different methodology, or from reframing an issue addressed in the initial report before analyzing it." (citations omitted)); *K&N Eng'g, Inc v. Spectre Performance*, No. EDCV 09-1900VAP (DTBx), 2011 WL 13131157, at *11 (C.D. Cal. May 12, 2011) (finding survey evidence was proper rebuttal evidence even though the affirmative expert did not introduce survey evidence). Excluding the one impermissible (untimely) use discussed in Part IV.B below, using survey evidence to rebut Sharp is precisely what Butler does.

Plaintiffs also repeatedly emphasize the fact that Butler was retained and that she completed her survey prior to the submission of Sharp's report. The timing of her retention is irrelevant to whether or not she rebuts Sharp. Good lawyers often retain rebuttal experts to do some groundwork in advance so there is sufficient time for an expert to prepare his or her rebuttal report (particularly in a case like this where the deadline to disclose rebuttal experts is less than three weeks after the deadline to disclose affirmative experts). The timing of Butler's survey, however, may raise questions about whether she designed it in a manner aimed solely at rebutting Sharp. Nevertheless, the timing merely suggests a concern that may or may not matter to a factfinder; it is insufficient to support exclusion.

### B. MATERIALITY

One area where Defendant may not use Butler's opinions, however, is on the issue of materiality. Use of Butler on that topic would take her outside of the subject matter of Sharp's opinions and turn her into a belatedly-disclosed affirmative expert. The parties' class certification briefs reflect, among other things, both their arguments on the issue of whether class-wide damages can be shown and their arguments on the issue of materiality. The materiality arguments are made in the context of the proposed UCL/FAL class for the 2019 Case. Notwithstanding the preceding

section, Butler cannot be used to rebut Plaintiffs' materiality arguments in the 2019 Case with respect to the proposed UCL/FAL class unless Plaintiffs offer Sharp on that issue (it does not appear that they do or will). While it is permissible for Defendant to use Butler to attack Sharp, his assumptions, and his methodology, it is not permissible to use Butler *as a rebuttal expert* on an issue on which Sharp is not offered. It is on this issue of materiality that Butler delves into the kind of "separate and distinct analysis" that is improper for a rebuttal expert. *See Wreal*, 2016 WL 8793317, at *3 (stating that a rebuttal expert may not provide separate and distinct analysis). If Defendant wanted to use Butler to affirmatively attack the issue of materiality, it needed to disclose her as an affirmative expert. Nevertheless, Defendant did not do so.

Tellingly, Defendant's counsel effectively acknowledged at the February 26, 2020 hearing that the disclosure of Butler's opinions on materiality, in the context of the proposed UCL/FAL class in the 2019 Case, was untimely. Specifically, the following dialogue ensued between Defendant's counsel and the Court:

> [Defendant's counsel]: [H]er report does address the issue of class-wide materiality, as well, which is alleged by the plaintiffs in their Complaint.
> . . .
> THE COURT: Okay. But if you wanted to use her to address that issue, did you not have to notice her up as an affirmative expert that was going to be on that issue?
> [Defendant's counsel]: So, I do agree, Your Honor. So I think if that -- obviously, if Dr. Sharp comes out and what you're left with is sort of a world of what is sort of addressing plaintiffs' theory of materiality independent of sort of how it's baked into Dr. Sharp's assumption, *then we're in the rubric of her not being a pure rebuttal expert*. And you would have to analyze it, the issue under the Rule 37, you know, whether or not there was prejudice or substantial justification for the disclosure. But you are correct, Your Honor. Yes, it would not be -- clearly not a rebuttal report and it would not have been filed in a timely way. Excuse me. Served in a timely way.
> . . .
> [T]he primary purpose here was to have her rebut Dr. Sharp and the assumptions that are being made that are inherent in any damages model including, you know, that there's a notion of class-wide harm and that it's uniform and you don't need to look at these individualized issues. Her report certainly does that. And that was the

purpose of it. My only point was in response to your question earlier about what happens if Sharp comes out, what is the, you know, can this still be used? And my response was I do think it still has some relevance to the case, *but then we're in a world we agree it was not timely disclosed* and the only question would be in terms of can it come in, has there been some prejudice to the plaintiffs.

DE 212 at pp. 135-38 (emphasis added).

Because Butler's conclusions on class-wide materiality that do not rebut Sharp were untimely, the question becomes whether Defendant's failure to disclose Butler by the affirmative expert deadline was substantially justified or harmless. *See Guevara*, 920 F.3d at 718 (citing Fed. R. Civ. P. 37(c)(1)). When evaluating justification and harmlessness, courts may consider various factors including any surprise caused by the late disclosure, the ability to cure the surprise, whether the late disclosure will disrupt trial, the importance of the evidence, and the explanation provided for the late disclosure. *Ward v. Carnival Corp.*, No. 17-24628-CV, 2019 WL 1228063, at *2 (S.D. Fla. Mar. 14, 2019) (citing *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250-51 (M.D. Fla. 2012)).

The Court has considered the foregoing factors and does not find substantial justification or harmlessness sufficient to excuse Defendant's late disclosure of Butler on the limited affirmative issue of materiality. As to the factor of surprise, while it should come as no surprise that Defendant offered an expert to rebut Plaintiff's damages expert and certain of his assumptions, Defendant's use of a rebuttal expert on the affirmative issue of materiality when Plaintiffs offered no affirmative expert on that precise issue surely resulted in at least some surprise. Plaintiffs were able to somewhat cure the surprise and prejudice resulting therefrom inasmuch as they were able to take Butler's deposition, but they were not able to fully cure that surprise by offering their own expert on materiality in response to Butler in light of the class certification discovery and briefing

deadlines.[17]  Permitting Plaintiffs additional time to offer their own expert to rebut Butler on materiality will almost definitely delay any class certification ruling.  Turning to the importance of the evidence, Butler may be an important witness, but her conclusions are only being excluded in a limited manner that only concerns one proposed class in one of the two consolidated cases.

Finally, on the issue of justification, Defendant argues that it had a good faith basis to believe Butler's report rebuts Sharp.  While Butler's report largely rebuts Sharp, Defendant should have known it would be unlikely for an expert economist's damages report to directly espouse any opinions to affirmatively establish class-wide materiality.  Thus, Defendant has not met its burden of showing substantial justification.  Based upon the Court's consideration of the foregoing, the Court does not find substantial justification or harmlessness sufficient to permit Defendant's use of Butler on the limited issue of materiality.  If the Court were considering the potential wholesale exclusion of Butler, the Court may consider alternative options in light of Butler's importance, but the Court does not find that to be necessary given that Butler is only being excluded from affirmatively offering opinions on a single limited issue.

## C.  CONCLUSION ON BUTLER MOTION

To be clear, Butler is being excluded on a very limited basis.  She is not being excluded in any manner in the 2018 Case.  In the 2019 Case, Butler is not being excluded in any manner with respect to the Court's consideration of the proposed warranty class.  She is only being excluded on the issue of materiality with respect to the proposed UCL/FAL class, but she may respond to any of Sharp's opinions (or assumptions) concerning that class.  Butler, however, may not be used to affirmatively establish a lack of materiality for the proposed UCL/FAL class in the 2019 Case.

---

[17] The parties were required to complete expert discovery related to class certification on January 27, 2020 (the date on which Plaintiffs took Butler's deposition), which was only ten days after Defendant's disclosure of Butler.

The Court notes that its limited exclusion of Butler is consistent with other cases. *See, e.g.*, *K&N Eng'g*, 2011 WL 13131157, at *11 (permitting use of survey for rebuttal purposes but not for party's case-in-chief when the survey evidence was not disclosed by the initial expert deadline).

## V.     **PLAINTIFFS' *DAUBERT* MOTION [DE 147]**

Plaintiffs' *Daubert* Motion seeks to exclude the expert testimony and affirmative report of Bruce A. Strombom ("Strombom"), portions of Strombom's rebuttal report, and the expert testimony and rebuttal report of Butler (to the extent Butler is not excluded pursuant to the Butler Motion).[18] For the reasons discussed below, the Motion is denied as to Butler, and it is granted in part and denied in part as to Strombom. While the Court will not exclude Strombom's reports (other than the last sentence of paragraph 20 of his rebuttal report), Strombom may not offer the first opinion in his affirmative expert report—that Plaintiffs have not proposed a methodology to calculate class-wide damages.[19] In addition, if Strombom testifies at any class certification hearing, he may not include any improper factual narrative in his testimony. Defendant should warn Strombom not to cross this line.

### A. BUTLER

As discussed above, Defendant offered Butler (primarily) as a rebuttal expert to Sharp, Plaintiffs' damages expert. Butler conducted a survey on which she bases her opinions. In conducting her survey, she separated the 200 participants into two randomly-assigned groups of 100 hundred each. Only one group, which Butler coins the "SSBS Disclosure Group," was

---

[18] Plaintiffs' *Daubert* Motion also sought to exclude experts Christian Page and Zdravko Salipur. As mentioned above, however, Plaintiffs have since withdrawn their request to exclude Page and Salipur. *See* DE 195.

[19] Strombom will not, however, be precluded from rebutting Sharp or from testifying that Plaintiffs have not proposed any methodology beyond that proposed by Sharp.

provided with catalogue pages (from Defendant's product catalogue) that were modified to add a disclosure about the alleged defect. The other group received the same catalogue pages without the added disclosure. The disclosure included in the catalogue pages provided to the SSBS Disclosure Group was as follows:

> Note: The "hook and loop" or "Velcro-like" material of the SSBS connection can lose adhesion over time with repeated use, thereby causing the SSBS to lose strength to support the weight of the vest. In such cases, the ballistic panels may not stay in the proper position. Exposure to moisture and constant tension from pulling may accelerate this loss of adhesion.

DE 142-1 at ¶ 34.

Plaintiffs attack Butler's survey methodology as unreliable. They also argue that Butler should be excluded under the "fit" prong of *Daubert*. Lastly, they argue that Butler should be excluded under Federal Rule of Evidence 403 if she is not otherwise excluded.[20] As discussed herein, the Court disagrees with the foregoing arguments raised by Plaintiffs. Ultimately, Plaintiffs' *Daubert* challenges concerning Butler may (or may not) affect the weight that a factfinder gives to Butler's opinions, but it is not difficult to conclude that Plaintiffs' admissibility arguments regarding Butler fail.

### 1. Reliability

Although the parties once again conflate the concepts of reliability and fit, it is evident that most of Plaintiffs' *Daubert* challenges to Butler concern reliability. Plaintiffs argue that there were flaws with Butler's survey population because, among other things, she excluded an indeterminable number of survey participants. Nevertheless, "[t]o the extent that there were flaws

---

[20] *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

in the survey population, this goes to weight rather than admissibility." *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262-KMM, 2019 WL 1977514, at *3 (S.D. Fla. Feb. 28, 2019) (citing *OraLabs, Inc. v. The Kind Grp. LLC*, No. 13-CV-00170, 2015 WL 4538442, at *5 (D. Colo. July 28, 2015)). Plaintiffs also argue that Butler's disclosure regarding the alleged SSBS defect was inadequate because the disclosure downplays issues. In addition, Plaintiffs contend that Butler did nothing to ensure survey participants read the disclosure. On the issue of whether participants actually read the disclosure, Plaintiffs note that the majority of the participants completed the survey in less than ten minutes and that participants were only required to view each catalogue page for a minimum of five seconds.

These are all good points to raise before the factfinder, and Defendant raises various good points in response. Nonetheless, the bottom line is that while Plaintiffs' arguments regarding the reliability of Butler's survey methodology may or may not persuade the factfinder to afford her conclusions less weight, they do not affect the admissibility of Butler's opinions. Plaintiffs' counsel effectively acknowledged as much at the February 26, 2020 hearing. *See* DE 212 at p. 129 ("Judge, I think in the normal case, a lot of it, not all of it, but a lot of it would go to weight."). Moreover, this is consistent with other recent decisions in this district. *See, e.g.*, *Taylor*, 2019 WL 1977514, at *2 ("The probative value of a consumer survey is a highly fact–specific determination and a court may place such weight on survey evidence as it deems appropriate. While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare. Usually, objections based on flaws in the survey's methodology are properly addressed by the trier of fact." (internal citations and quotation marks omitted)).

## 2. Fit & Rule 403

Plaintiffs' main fit argument is that Butler does not test a relevant inquiry. Relatedly, Plaintiffs argue that Butler's opinions will not aid the factfinder in resolving any disputed factual issues such as whether Defendant's alleged omissions regarding the alleged defect would deceive a reasonable consumer from an objective standpoint. Plaintiffs' argument regarding potential deception of a reasonable consumer, however, concerns the materiality issue on which Butler has been excluded from offering an affirmative opinion. Thus, that argument appears to be moot. Moreover, even if that argument were not moot, the Court finds that Butler may aid the factfinder in evaluating Sharp's opinions, the expert she has been offered to rebut. Thus, the Court cannot conclude that Butler's opinions and testimony will not aid the trier of fact.

While Plaintiffs heavily rely on *Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 10858370 (S.D. Fla. June 2, 2015), and while they contend it is directly on point, it is clearly distinguishable. First and foremost, the expert at issue in *Bowe* (Nowlis) was an affirmative expert, not a rebuttal expert. *See generally id.* In addition, the court in *Bowe* merely found Nowlis's opinions to no longer have any relevance as only narrow issues remained to be determined following the entry of partial summary judgment. *Id.* at *4. In this case, however, there are several claims pending with much broader issues still being litigated at an earlier stage. Furthermore, Plaintiffs have not sufficiently addressed why they believe Butler will not be helpful with *any* issues in this case. And, as mentioned above, the Court finds that Butler may assist the trier of fact with its consideration of Sharp's opinions.

Additionally, Plaintiffs contend that Butler's disclosure does not adequately disclose the alleged defect. Stated differently, Plaintiffs assert Butler's survey results are not relevant because SSBS vests suffer from a defect different than that set forth in Butler's disclosure. The Court,

however, finds that the disclosure sufficiently summarizes, in a general sense, some of the main issues alleged in the Complaint. Ultimately, it is for the factfinder to determine whether to place any lesser weight on Butler's disclosure if it finds the disclosure to inadequately capture the alleged issues. Finally, Plaintiffs barely addressed any Rule 403 issue in the Butler section of Plaintiffs' *Daubert* Motion beyond dropping a handful of general parentheticals as if it were an afterthought. *See* DE 147 at p. 28. Nothing in the disclosure nor any of the other issues raised by Plaintiffs persuade the Court that Butler should be excluded under Rule 403.

### B. STROMBOM

By way of background, Strombom is an economist who prepared both an affirmative expert report concerning damages issues and a rebuttal report to Sharp. Before discussing Strombom's affirmative expert report, it is important to note that the present cases, the 2018 Case and the 2019 Case, represent Plaintiffs' (not all Plaintiffs, but most of them) second attempt to obtain class certification against Defendant. In the previous attempt (Case No. 17-cv-62051; the "Prior Case"), class certification was denied, and the case was dismissed without prejudice. *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207 (S.D. Fla. 2018). The Prior Case is only important to mention because Strombom's affirmative expert report in this case is the exact same affirmative expert report he tendered in the Prior Case.[21]

### 1. Affirmative Report

In his affirmative expert report, Strombom provides four opinions. First, he opines that Plaintiffs have not proposed a methodology that would allow damages to be calculated on a class-wide basis. Second, he rejects the full-refund restitution theory pled in the Complaint based on the facts of the case. Third, he opines that even if there were a way to apply a full-refund theory,

---

[21] Unlike Strombom, Sharp and Butler were not offered as experts in the prior case.

multiple individualized determinations would need to be made. Fourth, based upon Plaintiffs' allegations regarding benefit of the bargain damages, Strombom analyzes benefit of the bargain issues and concludes that a benefit of the bargain analysis would be overrun by several individualized issues in this case.

Plaintiffs raise several grounds in support of their request to exclude Strombom's affirmative expert report and related testimony. Plaintiffs' arguments regarding Strombom are largely fit-based arguments. First, they contend that Strombom's report is irrelevant to this case because it refers to allegations and reports from the Prior Case, which they assert had fewer plaintiffs and different proposed classes. While there are some differences between this case and the Prior Case, the cases are nevertheless similar in many respects,[22] and Plaintiffs do not contend that Strombom's report does not fit *any* of the issues in this case. With respect to the plaintiffs in this case and the Prior Case, most are the same. In fact, all of the plaintiffs in the Prior Case are included within the group of Plaintiffs in this case. In addition, just like warranty and FDUTPA claims have been brought in this case, warranty and FDUTPA claims were brought in the Prior Case. Thus, Strombom's opinions should have at least some relevance to damages issues concerning those claims. Ultimately, the specific examples Plaintiffs raise to support their argument regarding the relevance of Strombom's opinions more properly concern the weight to be

---

[22] In their Reply, Plaintiffs assert that "Judge Ungaro held that the factual and legal issues here are materially different, including substantial differences in the classes." DE 185 at p. 5 n.4 (citing DE 53 at p. 9). Plaintiffs, however, take Judge Ungaro's statements out of context. Judge Ungaro's statement that "there are numerous 'material differentiating facts' that alter the 'legal inquiry' into standing here," DE 53 at p. 9, was made in the context of determining whether the 2018 Case should be dismissed on collateral estoppel (preclusion) grounds inasmuch as the Prior Case was dismissed for lack of standing. Notably, Judge Ungaro also stated that "[t]o be sure, the claims and parties in this case and the prior action are similar." DE 53 at p. 9. She also separately stated that the Prior Case was "nearly identical" to the 2018 Case. DE 53 at p. 4. Regardless, the differences in the Prior Case are insufficient to negate the potential helpfulness of Strombom's report and testimony in this case.

given to Strombom's opinions in the context of this case, if the examples Plaintiffs raise have any effect at all. Regardless, the limited differences between this case and the Prior Case are insufficient to warrant the exclusion of Strombom.

Second, Plaintiffs contend that Strombom's first three opinions—regarding the lack of a proposed methodology, the inapplicability of a full-refund theory, and the individualized issues plaguing a full-refund theory—are irrelevant to this case. Plaintiffs do very little to support this argument beyond stating that they have submitted an expert report from Sharp on damages that provides a benefit of the bargain methodology for the calculation of damages. Nevertheless, the fact that Sharp's report proposes a methodology, albeit one with its own issues, renders Strombom's first opinion irrelevant. Thus, the Court excludes Strombom's first opinion.[23]

However, Plaintiffs' argument that Strombom's second and third opinions are irrelevant is meritless, particularly considering the discussion that occurred at the February 26, 2020 hearing. At that hearing, the Court noted that Sharp's report did not propose a full-refund theory; consequently, the Court asked whether Plaintiffs were abandoning the full-refund theory. DE 212 at p. 55. Plaintiffs' counsel responded that Plaintiffs only need to propose a reasonable methodology for class certification purposes and that they may still seek other measures of damages at trial if supported by the evidence. *Id.* at pp. 55-56. Thus, it was evident that Plaintiffs were not abandoning their full-refund theory (a theory that is expressly pled in the Complaint). Therefore, Strombom's second and third opinions critiquing the applicability of a full-refund theory clearly remain relevant.

---

[23] Defendant argues that Strombom's report was resubmitted in this case to show, among other things, that Plaintiffs never proposed a class-wide damages methodology in the Prior Case. Whether they did or did not propose any such methodology in the Prior Case has nothing to do with whether they proposed a methodology in this case.

Third, Plaintiffs argue that Strombom's report merely contains narrative and legal argument that Defendant's counsel can make instead of doing anything to assist the factfinder with understanding the evidence or determining a fact in issue through the application of specialized or technical expertise. It is improper for an expert "to become a vehicle for factual narrative." *Duling v. Domino's Pizza, LLC*, No. 1:13-CV-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015) (quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013)). *See also Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) ("Although an expert may rely on facts or other data in evidence when constructing an expert report, a party may not present an expert to the jury 'solely for the purpose of constructing a factual narrative based upon record evidence.'" (citation omitted)). "Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702." *Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013) (quoting *Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, 2011 WL 3586468, at *2 (S.D.N.Y. Aug. 12, 2011)). Experts that do nothing more than act as narrators of facts "fail to 'convey opinions based on [their] knowledge and expertise.'" *Duling*, 2015 WL 3407602, at *12 (quoting *Tourre*, 950 F. Supp. 2d at 675). An expert may, however, "articulate the 'factual underpinning' upon which he bases his opinion." *Id.* (citing *FNB Bank v. Park Nat'l Corp.*, 996 F. Supp. 2d 1187, 1190 (S.D. Ala. 2014)). Additionally, expert testimony that "synthesizes or summarizes data in a manner that streamlines the presentation of that data" is admissible. *Scott*, 315 F.R.D. at 45 (quoting *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 504 (S.D.N.Y. 2015)) (internal quotation marks omitted).

Strombom's report flirts with the line between "articulating the factual underpinning" of his opinions and narrating facts. His report undoubtedly contains some improper factual narrative beyond that which may be necessary to provide the facts supporting his opinions. In fact, to a

certain extent, Strombom cherry picks testimony to include in his report that is consistent with Defendant's theory of the case rather than merely supplying the record evidence Strombom necessarily relied on in conducting his analysis. For instance, in paragraph 19 of his report, he states that certain evidence is consistent with the testimony of one of Defendant's employees, "who testified that 'I think we have a very low percentage of returns from what I have seen overall from the industry. And the defect type returns are probably close to the bottom of that as far as our percentage of what is returned.'" The inclusion of such argumentative statements in Strombom's report improperly and unnecessarily attempts to bolster the testimony of the employee and Defendant's version of the case. *Cf. United States v. Kirovski*, No. CR 08-367 MCA, 2009 WL 10708359, at *3 (D.N.M. Jan. 9, 2009) ("The function of expert testimony in this trial is not to serve as a mere pretext for bolstering the credibility of the government's fact-witnesses by mirroring their version of events in a narrative statement that stresses the similarities between the fact witnesses' version of events and the expert's description." (internal quotation marks and alterations omitted) (quoting *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994))). Moreover, Strombom clearly does not rely on the aforementioned testimony of that employee, which does not provide any specific data, in forming his opinions. At any class certification hearing, testimony containing similar factual narrative will not be permitted.[24]

---

[24] Other paragraphs of Strombom's report, including paragraph 22, also contain improper factual narrative. Paragraph 22 of his report provides as follows:

> Similarly, the State of Ohio recently renewed its contract with PBE. PBE also has received positive reviews of PBE products from police departments around the country, including the police departments in Los Angeles and Sacramento County, CA, and received high ratings from these customers on its customer reference forms. In addition, a letter of recommendation from the Chief of Police in San Antonio, TX stated that officers in San Antonio "have selected Point Blank time and time again as the body armor of choice."

Nevertheless, Strombom does more than just provide improper factual narrative. Based upon his background and experience, he applies principles to the facts of this case that may assist the trier of fact with evaluating, among other things, the potential predomination of individual issues concerning any damages inquiry in this case. Plaintiffs have requested the exclusion of Strombom's report and testimony in their entirety. They have not, however, asked the Court to specifically strike or limit any portions of Strombom's affirmative report, so the Court will not strike out individual paragraphs of his report. Nonetheless, Strombom may not provide any testimony containing improper factual narrative such as the examples of improper narrative set forth above. Such testimony is unhelpful to the trier of fact because "it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004).

Finally, Plaintiffs assert that Strombom improperly opines on ultimate issues that are for the factfinder or the Court to decide. In support of this argument, Plaintiffs merely note Strombom's statement in his report that he was asked to opine on whether the injury and damages Plaintiffs allege can be assessed on a class-wide basis. Plaintiffs appear to indicate this encroaches on the ultimate determination of whether class certification is appropriate (even though their own expert, Sharp, purports to opine on a similarly-framed issue). Nevertheless, Plaintiffs fail to further explain their "ultimate issue" argument, and they do not point to any specific legal conclusion Strombom has supposedly rendered. Notably, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Moreover, "whether individualized differences predominate such that class certification should be denied [] is the ultimate legal question that is left to the Court to decide." *Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 283 (M.D. Fla. 2017). Because Strombom has not gone so far as providing a legal conclusion akin to whether

individual issues predominate such that class certification should be denied, and Plaintiffs fail to show why Strombom's opinions regarding assessment of damages on a class-wide basis are otherwise objectionable, the Court finds that Strombom's report and testimony should not be excluded based upon Defendant's "ultimate issue" argument.[25]

## 2. Rebuttal Report

Plaintiffs also seek to exclude various portions of Strombom's rebuttal report, which Strombom authored in response to Sharp. Strombom's rebuttal report was submitted on January 17, 2020, the deadline to provide expert rebuttal reports. First, Plaintiffs contend that certain of the information included in the rebuttal report was untimely disclosed because such information improperly supplemented information contained in Strombom's initial report after the deadline to disclose affirmative experts. Thus, Plaintiffs argue the supplemented information needed to be included in Strombom's affirmative expert report (or otherwise disclosed by the affirmative expert deadline) to be considered timely.[26] Second, Plaintiffs assert that, like Strombom's initial report, portions of his rebuttal report contain improper narrative and legal argument. Third, Plaintiffs

---

[25] While Plaintiffs accurately quote portions of the cases they cite on page 6 of their Reply [DE 185] regarding this point, the contexts in which the statements are made do nothing to support Plaintiffs' argument that Strombom is providing legal conclusions.

[26] In their Reply [DE 185], Plaintiffs argue that Strombom's reports should also be excluded because the data that Strombom relies on is highly inaccurate and, consequently, unreliable. This argument was raised for the first time in the Reply because Defendant did not provide the correct data to Plaintiffs until after Plaintiffs' *Daubert* Motion was filed. Nevertheless, this issue has already been addressed pursuant to the Court's Order Denying Plaintiffs' Motion for Sanctions [DE 211]. Therein, the Court stated, in pertinent part, that "the new or updated discovery information does not have any *material* impact on the expert reports at issue." In footnote 3, the Order goes on to state that any effect the discovery information may have on any expert opinions in this case only goes to the weight the Court should give to those opinions. To be clear, the Court's statement regarding no "material" impact pertains to the admissibility of the expert reports. In other words, the updated information does not affect the admissibility of the expert reports at issue. Nevertheless, the updated information may very well have a material impact on the weight of Strombom's opinions (or it may not). Ultimately, that is for the factfinder to decide.

argue that Strombom's rebuttal report contains many paragraphs that merely repeat paragraphs from his initial report. Consequently, they claim such paragraphs should be excluded as duplicative and unnecessary. The first two arguments are discussed in the paragraphs that follow. For the third argument, however, Plaintiffs do not offer any legal authority to support the notion that statements or information in an expert's rebuttal report should be excluded merely because the same information appears in a separate affirmative report prepared by the expert. Therefore, the Court will not exclude any paragraphs on the sole basis that they are also contained in Strombom's initial report.

As to Plaintiffs' first two arguments—that Strombom provides untimely supplemental information and that he provides improper narrative and/or legal conclusions—Plaintiffs take issue with paragraphs 17, 19, 20, 31, 38, 44, and 46 of Strombom's rebuttal report. They do not, however, specifically apply their arguments to these paragraphs of the rebuttal report. While the Court will not consider exclusion of the numerous paragraphs that Plaintiffs merely dub "duplicative and unnecessary," it will consider whether any of the aforementioned seven (7) paragraphs should be excluded.

Initially, Plaintiffs seek to exclude paragraphs 17, 19, and 20 of Strombom's rebuttal report, which are included to purportedly provide factual information supporting Strombom's determination that "[t]he data indicate that only a small fraction of consumers experienced performance issues potentially related to the alleged defect." DE 156-23 at p. 8. Paragraph 17 of Strombom's rebuttal report (including the tables reflected therein) discusses, and provides data related to, product return rates. It does not contain any improper narrative or legal conclusions, but it does update some information that is also contained in Strombom's initial report. That information, however, is also relevant to rebutting the subject matter of Sharp's report because

Strombom relies on that information to rebut Sharp's assumption of uniform harm. The information may also be relevant to other issues with Sharp's approach including potential overcompensation issues. Thus, it is not improper for Strombom to include such data in his rebuttal report.

Although an expert may not untimely supplement his or her report to provide new opinions or to bolster opinions he or she previously provided,[27] that is plainly not what Strombom does. Instead, he offers opinions aimed at rebutting Sharp. Simply because Strombom updates some data he used in his earlier report does not mean that he is providing an untimely supplemental report instead of a rebuttal report. Moreover, the Court finds that Strombom is not providing such information for the purpose of bolstering the opinions set forth in his initial report.

With respect to paragraphs 19 and 20, only paragraph 20 discusses updated data. Such supplemental or updated information is properly included in Strombom's rebuttal report for the same reason as paragraph 17—the information is used to support a conclusion of Strombom that is aimed at rebutting Sharp's uniform harm assumption and potential issues with Sharp's methodology. Therefore, the information is properly included in Strombom's rebuttal report.

Paragraph 20 does contain some improper narrative. Specifically, the last sentence— "Customers, like Gall's, Inc., would not be expected to purchase SSBS products repeatedly, let alone in increasing numbers, if users did not generally find them to be satisfactory"—is improper

---

[27] *See Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) ("Consequently, a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." (citation omitted)); *K&N Eng'g*, 2011 WL 13131157, at *7 ("[A] supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original expert report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c). A court's inquiry is, therefore, whether information disclosed in a supplemental report is incomplete or incorrect, or rather is an attempt to add to, strengthen, or deepen opinions expressed in the original expert report." (internal quotation marks and citations omitted)).

argument that is included solely to bolster Defendant's theory of the case. Such argument is more appropriately made in closing argument. Therefore, that sentence will be excluded from Strombom's rebuttal report. Conversely, the Court finds that paragraph 19 does not contain improper narrative (though it comes close by providing statements of Plaintiffs seemingly for the purpose of supporting Defendant's case instead of providing data Strombom necessarily relied on to form his opinion in the first instance).

The Court also finds that paragraphs 31, 38, 44, and 46 of Strombom's rebuttal report do not improperly provide any narrative testimony or any untimely affirmative opinions. Ultimately, all of the opinions offered in Strombom's rebuttal report constitute proper rebuttal to Sharp. Plaintiffs have failed to demonstrate otherwise, while Defendant has met its burden of establishing Strombom's admissibility, with the limited exceptions discussed above.

## VI.  CONCLUSION

For the reasons discussed above, it is **ORDERED** and **ADJUDGED** that:

1. The Butler Motion [DE 142] is **GRANTED IN PART and DENIED IN PART**.[28] Butler (and her expert report) may not be used to address the issue of materiality regarding certification of the proposed UCL/FAL class in the 2019 Case, unless Plaintiffs cite opinions of Sharp on the issue. The Butler Motion is otherwise denied.

2. Defendant's *Daubert* Motion [DE 145] is **DENIED**.

3. Plaintiffs' *Daubert* Motion [DE 147] is **GRANTED IN PART and DENIED IN PART**. It is denied as to Butler. It is granted in part and denied in part as to Strombom. Specifically, Strombom's first opinion in his affirmative expert report, that Plaintiffs have not

---

[28] Under the circumstances, the Court finds that neither party is entitled to an award of expenses under Rule 37 in connection with the Butler Motion.

proposed a methodology to calculate class-wide damages, is excluded. In addition, the last sentence of paragraph 20 of Strombom's rebuttal report is excluded. Furthermore, Strombom may not provide any improper factual narrative if he testifies at any class certification hearing.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 3rd day of April 2020.

Jared M. Strauss
**United States Magistrate Judge**

Copies furnished to counsel via CM/ECF