**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NOS. 18-CIV-63130-RAR**
**19-CIV-61881-RAR**

**OHIO STATE TROOPERS**
**ASSOCIATION, INC.,** *et al.*,

      Plaintiffs,

v.

**POINT BLANK ENTERPRISES, INC.,**

      Defendant.

_____/

**MIGUEL PORRAS,** *individually and on*
*behalf of all others similarly situated*,

      Plaintiff,

v.

**POINT BLANK ENTERPRISES, INC.,**

      Defendant.

_____/

<u>**OMNIBUS ORDER DENYING CLASS CERTIFICATION AND DISMISSING CASE**</u>

Plaintiffs Ohio State Troopers Association, Inc., International Union of Police Associations, Trevor Koontz, Eric Rohner, Ryan Purpura, Alexander Pater, Lance Deshuk, and Miguel Porras claim that Defendant Point Blank Enterprises, Inc. ("Point Blank") violated various consumer protection statutes and breached express and implied warranties by selling bullet-proof vests with allegedly defective velcro straps. As a result, Plaintiffs claim that they and their proposed classes of purchasers are entitled to damages and injunctive relief.

This action is now before the Court upon Plaintiffs' Consolidated Motion for Class Certification and Related Relief, and Memorandum of Law in Support [ECF No. 159] ("Motion")

and Point Blank's Amended Memorandum of Law in Support of its Motion to Deny Class Certification [ECF No. 75] ("Def. Mot.").[1] Essentially, the parties disagree as to whether Plaintiffs meet the requirements of Federal Rule of Civil Procedure 23. Defendant Point Blank argues that this action is not suited for class certification because, *inter alia*, the proposed class definition is overbroad and individualized questions predominate over common questions. Plaintiffs, however, assure the Court that this action satisfies Rule 23 requirements and posit that Point Blank's concerns are an unfounded parade of horribles. After careful review of the record, the Court finds that Plaintiffs have failed to meet their burden. This action is not suited for class certification. Being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification [ECF No. 159] is **DENIED** and Point Blank's Motion to Deny Class Certification [ECF No. 75] is **GRANTED**, as set forth herein. Further, the Court finds that amendment would be futile. In the absence of class certification, the Court is without jurisdiction and the action is therefore **DISMISSED without prejudice**.

## <u>BACKGROUND</u>

The parties are well-versed in the facts of this case. Below, the Court gives only a brief recitation of the factual and procedural background relevant to the instant motions.

### *I. Factual Background*

#### *A. Defendant*

Point Blank is "a manufacturer of law enforcement protective products, including ballistic resistant soft body armor." Complaint-Class Action [ECF No. 1] ("Compl.") ¶ 1. Point Blank sells a variety of ballistic vest models, a subset of which contain a proprietary "Self-Suspending

---

[1] Also before the Court are: Defendant's Opposition to Motion for Class Certification [ECF No. 200] ("Opp."); Plaintiffs' Opposition to Motion to Deny Class Certification [ECF No. 158] ("Pls. Opp."); and Plaintiffs' Reply in Support of Class Certification Motion [ECF No. 221] ("Reply").

Ballistic System (SSBS)" feature. *Id.* at ¶¶ 1–2. An alleged defect in the straps of these SSBS vests is at issue in this action. *Id.* at ¶ 2.

### B. Plaintiffs

"Association Plaintiffs" include Plaintiff Ohio State Troopers Association, Inc. ("OSTA") and Plaintiff International Union of Police Associations ("IUPA"). *Id.* at ¶¶ 6–8. Both organizations are entities that represent the interests of their respective law enforcement members. *Id.* "Individual Plaintiffs" include Trevor Koontz ("Koontz"), Eric Rohner ("Rohner"), Ryan Purpura ("Purpura"), Alexander Pater ("Pater"), and Lance Deshuk ("Deshuk"). *Id.* at ¶¶ 10–52. Individual Plaintiffs are police officers in the Ohio State Highway Patrol. *Id.* Each officer purchased one of Point Blank's SSBS vests between 2012 and 2016, and each alleges that his vest contained defective SSBS straps. *Id.* Koontz and Pater each purchased a Point Blank Vision vest, Rohner and Purpura each purchased a Point Blank Elite vest, and Deshuk purchased a Point Blank HiLite (II) vest. *Id.* at ¶¶ 11–49.

Plaintiff Miguel Porras ("Porras") is a police officer in the Glendale California Police Department. Complaint, *Miguel Porras v. Point Blank Enters., Inc.*, No. 19-CIV-61881 [ECF No. 1] ("Porras Compl.") ¶ 22. Porras purchased Point Blank's "PBBA Elite" model of SSBS vest in 2014 and alleges the same defect with the SSBS. *Id.* at ¶¶ 23, 33. As Porras's case was consolidated after the Court's Order on Defendant's Corrected Motion to Dismiss [ECF No. 53] ("MTD Order"), the Court has yet to address whether Porras has Article III standing. Accordingly, the Court will separately address Porras and his claims and refer to Association Plaintiffs and Individual Plaintiffs collectively as *the* "Plaintiffs" (or, when necessary to discuss Porras and OSTA Plaintiffs together, as "OSTA Plaintiffs").

### C. The SSBS Vests

Plaintiffs allege that ballistic vests typically consist of two parts: ballistic panels for protection and a carrier into which the panels are placed.  Compl. ¶ 64.  In a traditional ballistic vest system, ballistic panels are placed into pouches on the carrier, which contains straps or another mechanism for suspending the vest as a garment on the wearer.  *Id*. at ¶ 65.  In Point Blank's SSBS vests, the straps used to suspend those vests are sewn directly onto the ballistic panels, and the panels are not removable by the user.  *Id*. at ¶¶ 66–68.  The straps utilize a "hook and loop" material—colloquially known as "velcro"—to connect and support the vest on its user.  Opp. at 5–6.

Point Blank claims that it makes "hundreds of different [SSBS vest] models—with different ballistic packages, carriers, weights, and designs that have changed over time."  Def. Mot. at 12.  Point Blank notes two intra-model design changes to the SSBS systems during the proposed class period—a change in the "hook" material for the strap closures in 2016 and a change in the "loop" material in 2017.  *Id.* at 4–5.

Plaintiffs allege that "PBE sold 7 models of concealable SSBS Vests during the relevant period—the Elite, Vision, Hi-Lite, C-Series, sold under PBE's PBBA brand, and the Blue Steel, Perform-X, and Standard, sold under PBE's PACA brand."  Pls. Opp. at 14.  Plaintiffs allege that the Vision and Blue Steel models are the same, the Hi-Lite and Perform-X models are the same, and the C-Series and Standard models are the same—with the only difference being the actual name.  *Id.*  Plaintiffs note that they have collectively purchased models that contain both intra-model design changes to the hook-and-loop materials.  *Id.* at 16.  Still, they argue that the alleged defect in the SSBS system is constant across each version, and that the intra-model design changes do not affect the vests' defective performance.  *Id.*

### D. The Alleged Defect

For each pair of SSBS straps, one strap contains a series of small hooks that engage with the loops on the other strap, holding the pair in place. Compl. ¶ 121. Hook and loop connections can be separated by shearing, peeling, or a combination of the two. Pls. Opp. at 2. "Shearing" is generally understood as separating the hook and loop materials by pulling them apart in a parallel manner (applying force until they break free from each other all at once), whereas "peeling" is understood as separating the hook and loop materials by lifting in a perpendicular manner and pulling one edge of the hook material back, allowing one row of hooks at a time to disengage from the loop material. *Id.*; Hearing Tr. [ECF No. 196] at 20:13–20.

At bottom, Plaintiffs claim that Point Blank's SSBS vests are defective because they allege that the straps will prematurely deteriorate and ultimately be unable to support the weight of the ballistic panel. Mot. at 2, 11–15. According to Plaintiffs, this defect exists at the time of sale because premature failure will inevitably occur regardless of how the hook and loop connections are separated. *Id.* However, Point Blank argues that the rate of degradation is dependent upon use and, while the SSBS straps may be damaged by shearing—which Point Blank contends is a "misuse"—the straps will not prematurely fail due to peeling. Opp. at 32–33, 38.

### E. The Warranties

Plaintiffs allege that Point Blank made both express and implied warranties regarding the quality and performance of its SSBS vests. Compl. ¶ 141. Specifically, Plaintiffs allege that there are three sources of express warranties: the care and maintenance manuals that are shipped with every SSBS vest; warranties sewn onto the ballistic panel of each SSBS vest; and Point Blank's advertisements. *Id.* ¶¶ 19–21. According to Plaintiffs, each of these warranties warranted the fitness and quality of the SSBS Vests for a period of five years. *Id.* ¶¶ 143–48. Point Blank contends that the SSBS portion of its vests is only warranted for two years. Opp. at 13.

Plaintiffs also allege that there are undisclaimed implied warranties that the SSBS vests are merchantable and fit for the particular purpose for which they are sold.  Compl. ¶ 151.  Plaintiffs argue that Point Blank breached the express and implied warranties because "the SSBS Vests do not pass without objection in the trade, are unsuitable for the ordinary and intended uses for which they were sold and are not merchantable," and Point Blank did not provide "a product which could provide the benefits described in the labels and advertising."  *Id.* ¶¶ 153–54.

### F.  Damages

In the Complaint, Plaintiffs assert that, because of the vests' alleged defects, all class members have "not received the benefit of the bargain," *id.* ¶ 178, have been damaged in the amount of the purchase price of their vests (about $700), and are subject to an increased safety risk, *id.* at ¶ 159.  Plaintiffs also allege that Association Plaintiffs' "members have purchased and/or wear the defective SSBS vests," *id.* at ¶ 205, and suffer the same damages.  However, in the Motion, Plaintiffs' damages model proposes to compensate class members in an amount equivalent to the value of Point Blank's "non-SSBS concealable Python carrier" (about $75-$90). Mot. at 45; Expert Report of D.C. Sharp, Ph. D. [ECF No. 180-34] ("Sharp Report") ¶ 24.

### II.  Procedural Background

#### A.  Prior Action

Plaintiffs brought a nearly identical action on October 19, 2017 ("Prior Action"), seeking damages and injunctive relief against Point Blank for breach of warranty and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501, *et seq*.  *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1214 (S.D. Fla. 2018).  Plaintiffs moved to certify a class for each count, which the Court denied for lack of standing on October 29, 2018.  *Id.*  Plaintiffs then filed the instant action, with a new complaint, on December 25, 2018.

### B.  Current Action

The instant action consolidates OSTA Plaintiffs' and Porras's complaints.  *See* Order Consolidating Cases [ECF No. 59].  OSTA Plaintiffs bring three counts: 1) breach of express warranty; 2) breach of implied warranty of merchantability; and 3) violation of FDUTPA.  Compl. ¶¶ 174–209.  The breach of warranty claims are brought by the Individual Plaintiffs, individually and on behalf of a class defined as:

> All individuals and entities in Florida, Georgia, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, Ohio, Pennsylvania, Texas, Virginia, and Washington that purchased Hi-Lite/Perform-X, Vision/Blue Steel or Elite model vest with a Self-Suspending Ballistic System from Defendant or one of Defendant's authorized distributors or sales representatives from December 16, 2012 up to the date a Class is certified by this Court.

Compl. ¶ 161.  The FDUTPA claim is brought on behalf of OSTA Plaintiffs, except Koontz, individually and on behalf of a class defined as:

> All individuals and entities in the fifty United States and the District of Columbia (with the exception of Alabama and California) that purchased a new concealable Hi-Lite/PerformX, Vision/Blue Steel or Elite model vest with a Self-Suspending Ballistic System from Defendant or one of Defendant's authorized distributors or sales representatives from December 16, 2013 up to the date a Class is certified by this Court.

*Id.*

Porras originally filed his complaint in the Central District of California.  His case was subsequently transferred to this District.  Porras brings five counts on behalf of a class of California purchasers: 1) breach of express warranty; 2) breach of implied warranty of merchantability; 3) violation of California's False Advertising Law ("FAL"); 4) violation of California's Unfair Competition Law ("UCL"); and 5) fraudulent concealment.  Porras Compl. ¶¶ 162–235.  The breach of warranty claims are brought by Porras individually and on behalf of a class defined as:

> All individuals and entities in California that purchased a new concealable SSBS Vest from Defendant or one of its sales representatives or authorized distributors from February 20, 2013 up to the date a Class is certified by this Court.

Mot. at 1.  The UCL, FAL, and fraudulent concealment claims are brought by Porras individually and on behalf of a class defined as:

> All individuals and entities in California that purchased a new concealable SSBS Vest from Defendant or one of its sales representatives or authorized distributors from February 20, 2014 up to the date a Class is certified by this Court.

*Id.* at 1–2.

## LEGAL STANDARD

A district court "has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).  "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation."  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).  To certify a class, the named plaintiffs must have standing and the putative classes must satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and at least one of the requirements listed in Rule 23(b).  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).  Rule 23(a) requires a court to make the following findings before certifying a class:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).  A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

If the Rule 23(a) prerequisites are satisfied, a court must then turn to Rule 23(b).  Here, Plaintiffs seek class certification under Rule 23(b)(2) and (b)(3).  A class may be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In addition, under Rule 23(b)(3), a plaintiff must also "establish that damages are susceptible of measurement across the entire class," though "[c]alculations need not be exact."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Importantly, a plaintiff seeking class certification carries the burden of proof and must "affirmatively demonstrate" that all the requirements of Rule 23(a) are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).  A plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33.  Accordingly, the merits of the underlying claim may be considered "to the extent [] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013).  Therefore, "before a district court determines the efficacy of

class certification, it may be required to make an informed assessment of the parties' evidence. That a trial court does so does not mean that it has erroneously reached the merits of the litigation." *Cooper v. S. Co.*, 390 F.3d 695, 712–13 (11th Cir. 2004) (internal quotations omitted), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

## ANALYSIS

### I. Standing

"[A]ny analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). In its order on Point Blank's Motion to Dismiss, the Court found that OSTA Plaintiffs resolved the standing defects[2] that led to the dismissal of the Prior Action. *See* MTD Order at 20–22. Accordingly, the Court need only determine whether Porras has Article III standing to represent his proposed California classes. Because he has repeated the errors that doomed OSTA Plaintiffs' previous case, he does not have such standing.

#### A. Standard

"[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman*, 221 F.3d at 1279. Article III standing exists where the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

---

[2] With the exception of Association Plaintiffs' "standing to represent a FDUTPA injunctive relief class comprised of nonmembers." MTD Order at 20.

(1992)).  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Id.* (quotations omitted).  For the injury to be "concrete," it must be "real," and not "abstract;" though it need not be "tangible."  *Id.* at 1548–49.  "It is not enough that the conduct of which the plaintiff complains will injure *someone*."  *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (emphasis in original).  "Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."  *Id.*

### B.  *Plaintiff Porras Lacks Standing*

The parties are well aware that Judge Ungaro denied class certification and dismissed[3] the Prior Action because OSTA Plaintiffs purported to represent "[a]ll individuals and entities . . . that purchased and/or used new SSBS Vests from [Point Blank]," but "they did not purchase or use all of [Point Blank's] new SSBS vests."  *Ohio State Troopers*, 347 F. Supp. 3d at 1222 (citations omitted).  As Judge Ungaro explained, "[m]any courts in this district have examined this exact issue in great depth and concluded that [] plaintiffs d[o] not have standing to bring claims for products that they did not purchase."  *Id.* at 1220.  The same is true for Porras.

Here, Porras seeks to bring California-based claims on behalf of "[a]ll individuals and entities in California that purchased a new concealable SSBS Vest from [Point Blank]."  Mot. at 1–2.  However, Porras only purchased one model SSBS vest: the "PBBA Elite."  Porras Compl. ¶ 23.  For this reason, Point Blank argues that, like OSTA Plaintiffs in the Prior Action, Porras lacks standing to certify a class containing all models of concealable SSBS vests.  Def. Mot. at 11–12.  Porras attempts to escape this fate by arguing that since his case was originally filed in

---

[3]  Without class certification, OSTA Plaintiffs could not meet the amount in controversy required for jurisdiction under 28 U.S.C. § 1332(a).  *Ohio State Troopers*, 347 F. Supp. 3d at 1231.

California and he brings California-based claims, this Court is obligated to apply Ninth Circuit standing precedent.[4]  Pls. Opp. at 9–10.  Porras is incorrect.

The Eleventh Circuit and several sister circuits, including the Ninth, have squarely rejected Porras's argument.  *See Murphy v. FDIC*, 208 F.3d 959, 965–66 (11th Cir. 2000) ("The Second, Eighth, and Ninth Circuits uniformly have agreed with the D.C. Circuit that in cases where *federal* law is at issue, transferee courts are obligated to follow their own interpretation of the relevant law. . . . We find the reasoning of the D.C., Second, Eighth, and Ninth Circuits persuasive.") (emphasis in original).  When a case is transferred under 28 U.S.C. section 1404(a), district courts within the Eleventh Circuit must apply the Eleventh Circuit's interpretation of federal law. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008) (citation omitted).  Therefore, because Article III standing is a matter of federal law, *Baker v. Carr*, 369 U.S. 186, 204 (1962), the Court must apply the Eleventh Circuit's standing precedent.

The Court sees no persuasive reason to deviate from Judge Ungaro's analysis in the Prior Action.[5]  Both classes Porras seeks to certify are defined as "[a]ll individuals and entities in

---

[4]  It is true that courts within the Ninth Circuit appear to apply a more liberal "sufficiently similar" analysis to a plaintiff's standing, wherein a plaintiff potentially could represent a class including products that she did not purchase.  *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 1204, 1219 (C.D. Cal. 2017) (concluding that plaintiffs who purchased a subset of defendant's line of televisions had standing to represent a class encompassing additional models, since the products were "sufficiently similar").  Nevertheless, the Court need not decide whether application of the Ninth Circuit's standard would lead to a different conclusion in this case.

[5]  In the alternative, Porras argues that he has standing to represent all models of concealable SSBS vests per the analysis applied in *Carter v. Forjas Taurus S.A.*, 701 F. App'x 759 (11th Cir. 2017).  Pls. Opp at 10.  In *Carter*, the named plaintiff negotiated a settlement agreement on behalf of a class of purchasers of nine models of guns that allegedly contained defects with their safety switches.  701 F. App'x at 762.  The district court approved the settlement agreement over the objection of three class members.  *Id.*  On appeal, the objectors argued that the named plaintiff lacked standing to represent the class.  *Id.* at 765.  With little analysis, the court rejected this argument—in an unpublished opinion—and affirmed the settlement agreement.  *Id.* at 765.  To the extent Porras is arguing that the Eleventh Circuit adopted a "sufficiently similar" analysis, Judge Ungaro flatly rejected this argument: "Plaintiffs' arguments that [Point Blank's] vests all contain identical SSBS systems with the same defect is not persuasive as similarity between products does not confer standing in the Eleventh Circuit."  *Ohio State Troopers*, 347 F. Supp. 3d at 1222 (citing *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1393 (S.D. Fla. 2014) ("[A] named plaintiff in a consumer class action lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that

California that purchased a new concealable SSBS Vest from [Point Blank]," Mot. at 1–2, but Porras only purchased *one* model of Point Blank's concealable SSBS vests, Porras Compl. ¶ 23. Consequently, Porras does not have standing to represent his proposed classes of California purchasers. *Ohio State Troopers*, 347 F. Supp. 3d at 1222; *Toback v. GNC Holdings, Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013) ("Plaintiff [] cannot establish his Article III standing with respect to any product other than the [product he purchased] and cannot raise claims relating to those other products which he did not purchase. The claims Plaintiff has standing to bring are therefore limited to those relating to the [product he purchased].") (citing *Lujan*, 504 U.S. at 560 and *Prado-Steiman*, 221 F.3d at 1279-80).

Accordingly, because Porras lacks standing to represent his proposed California classes, his Motion for class certification is **DENIED**. Thus, Porras is left only with his personal claims regarding his PBBA Elite vest, for which he cannot meet the amount in controversy required under section 1332. Porras's claims are therefore **DISMISSED without prejudice** for lack of jurisdiction. Because the Court has previously held that OSTA Plaintiffs do have standing in relevant part, *see* MTD Order at 15, the Court proceeds to the merits of OSTA Plaintiffs' Motion for Class Certification.

### II.  Ascertainability

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly

---

product, *even if he purchased a substantially similar product*.") (emphasis added); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (finding plaintiffs did not have standing to bring claims against defendant vehicle manufacturer for vehicles plaintiffs did not actually own even though plaintiffs alleged that the "same defective ACU was installed [in the vehicles] . . . this *'sufficient similarity' argument has not been adopted in the Eleventh Circuit*.") (quotation omitted) (emphasis added)); *see also Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1303 (S.D. Fla. 2020) (finding "[p]laintiffs do not have standing to assert claims based on the marketing of products that they did not purchase"); *Blobner v. R.T.G Furniture Corp.*, No: 8:17-cv-1676-T-30SPF, 2019 WL 3808130, at *4 (M.D. Fla. July 24, 2019) (finding plaintiff "lack[ed] standing as to any product he did not purchase").

ascertainable." *Little*, 691 F.3d at 1304 (internal citations and quotation marks omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (internal citation omitted). These "objective criteria [] should be administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiry." *Id.* Accordingly, "[a] court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003); *see also, e.g.*, *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where class was not adequately defined or clearly ascertainable).

Point Blank argues that the putative class definition is overbroad and that class members are not easily identifiable. The Court addresses these issues in turn.

### A. Class Definition

In this circuit, "[c]ourts have been particularly reluctant" to certify "classes that include both class members whose product has manifested the deficiency and those whose product has performed satisfactorily." *Harris v. Nortek Glob. HVAC LLC*, No. 14-CIV-21884, 2016 WL 4543108, at *5 (S.D. Fla. Jan. 29, 2016). "Indeed, if a class is 'overbroad' in this way, there is a 'compelling reason' to redefine it more narrowly." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (quoting *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009)). This is because "a class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." *Id.* As defined, the class definition here is overbroad because Plaintiffs seek to include all purchasers, including those whose vests have not manifested a defect.

Plaintiffs' sole theory of liability is that Point Blank's SSBS straps possess a defect that causes the straps to lose adhesiveness and fail prematurely. Mot. at 2, 11–15. Of course, the class definitions must match Plaintiffs' theory of liability. *Cf. Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) ("While we agree with the legal analysis of the district court, because the definition of the class it certified was in conflict with that analysis, we are uncertain of exactly what class it intended to certify."). Plaintiffs seek to represent "[a]ll individuals and entities . . . that purchased a new" SSBS vest.[6]  Mot. at 1–2.  Point Blank argues that this definition is overbroad because it includes purchasers whose vests have not manifested, and may never manifest, a defect. Opp. at 21–23. Plaintiffs counter that Point Blank mischaracterizes their claim because, they argue, the alleged defect is uniform to the class, as it exists at the time of sale. Reply at 3–4. The record demonstrates otherwise.

Under Plaintiffs' theory, the SSBS straps lose a certain amount of adhesiveness through use and fail after they lose enough strength to hold the vest's ballistic panel. Mot. at 2, 11–15. Plaintiffs acknowledge that the rate of degradation is dependent upon the way officers disengage the SSBS straps, but contend that the straps will fail irrespective of whether an officer shears or peels them. *Id.* at 13. This assertion finds no support in the record.[7]  Plaintiffs' own expert report, the Cole & Herrmann Report, found that the SSBS straps fail after "approximately 75 shear tests,"

---

[6]  Plaintiffs define both proposed classes this way. Mot. at 1–2. For this reason, the Court refers to "the class" instead of "classes," unless it is otherwise necessary to differentiate.

[7]  Point Blank argues that Plaintiffs "concede that if the SSBS fails, 'it does not fall apart through peeling, but rather, through shearing . . . .'"  Opp. at 32 (quoting Pls. Opp. at 2). While Plaintiffs do make this statement, it is open to two interpretations. One, the SSBS straps do not *reach the point of failure* through peeling, but rather, through shearing; or, two, *at the point of failure—i.e.*, the moment when the SSBS straps actually separate because they no longer have enough adhesive strength to hold the weight of the ballistic panel—the straps do not peel away from each other, but rather, shear as the ballistic panel falls downward into the officer's uniform. The Court finds the latter interpretation is almost certainly the point Plaintiffs were attempting to make. Accordingly, the Court is unwilling to characterize this particular statement as a "concession."

but did *not* find a failure point with peeling. *See* Cole & Herrmann Report [ECF No 161-36] at 2; Herrmann Dep. [ECF No. 201-34] at 46:10–14 ("Q: Sorry. So does your report say when, through peel tests, a vest would reach failure level?  A: No. Certainly the data would allow it to be approximated, but we do not state that here.").  While Plaintiffs' experts stopped their testing at only 50 peels, Point Blank's expert tested up to 2,500 peels and found that the straps did not reach failure. *See* Page Dec. [ECF No. 209-2] ¶ 32.[8]  This is critical.  According to Plaintiffs, 2,500 cycles represents use over a five-year period.  Mot. at 14.  Thus, even assuming the Court were to find that the warranty period is five years instead of two, the record evidence shows that the SSBS straps would not fail within the warranty period due to officers peeling the SSBS straps.  Under no construction could this constitute a uniform defect at the time of sale for Plaintiffs' proposed class of purchasers.  The alleged defect's manifestation is dependent upon a particular use— shearing.

Yet, Plaintiffs have offered no evidence to show that shearing is the predominant method of disengaging the SSBS straps—or, more critically for purposes of class certification—that it is the *exclusive* method.  On the contrary, Point Blank has submitted a study of 29 random officers which shows that *none* of them sheared the SSBS straps to don or doff their vests.  *See* Skow Dec. [ECF No. 201-22] ¶¶ 24, 26, 33.  In fact, even Plaintiffs Purpura and Rohner have testified that shearing is not the typical method used by officers.  *See* Purpura Dep. [ECF No. 201-19] at 56:11– 13 ("I would say that most officers take it off over their head.  I've never seen anyone peel the –

---

[8]  Plaintiffs try to undermine this conclusion by asserting that Dr. Paige's testing did not apply the appropriate amount of pressure to the SSBS straps.  Pls. Opp. at 19.  However, in response to Plaintiffs' questioning, Dr. Page explained that he measured the average force that a user would place on the SSBS straps and utilized this amount of force in his testing.  *See* Page Dep. [ECF No. 182-2] at 109:6–13, 16–17 ("Q.  Okay.  So [the amount of pressure] was relatively close or within range of the ASTM amount of 11 pounds plus or minus a quarter?  A.  Yes.  And so we would have interpreted that as, okay, that seems like a good number.  Q.  Okay.  And when you did the ASTM 5170 test [], then that was relatively within the approximate range of the 8 to 12 pounds.  Is that fair? . . . A.  Yes.  And so every cycle on that robotic fixture applied that amount of pressure.").

or any of that kind of stuff on their shoulder strap."); Rohner Dep. [ECF No. 201-20] at 99:5–7 ("Q.  And you're not aware of any officer that actually shears the vest to take it off, is that true?  A.  That's true.").  Therefore, the alleged defect is not uniform to the class and, as Plaintiffs' previous expert acknowledged, will not manifest in every vest.  *See* Price Dep. [ECF No. 201-29] at 276:8–11, 15–17 ("[Failure] could happen in the first 30 days of owning the vest.  It could happen within 18 months of owning the vest. . . . Q. Or it cannot happen at all, right?  A. It may not happen at all.").  Plaintiffs' class definition plainly includes many purchasers whose vests will never experience the alleged defect and therefore will never suffer a legal injury at the hands of the Defendant.

To be sure, the Eleventh Circuit has suggested that the mere presence of uninjured class members does not necessarily preclude class certification.  *See Cordoba*, 942 F.3d at 1275–76.  However, "a class should not be certified if it is apparent that it contains *a great many* persons who have suffered no injury at the hands of the defendant."  *Id.* at 1276 (quoting *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009)) (emphasis in original).  Such is the case here: having defined the class to include all purchasers, Plaintiffs' class definition is overbroad.

Judge Ungaro explained the same in the Prior Action: "The class is overbroad because it includes all individuals who purchased new SSBS vests, *including vests that are not defective . . .*"  *Ohio State Troopers*, 347 F. Supp. 3d at 1232 n. 12 (emphasis added).  Thus, class certification is improper.  *See, e.g.*, *Harris*, 2016 WL 4543108, at *6 (denying class certification where proposed class definition included "class members who have experienced the deficiency and those who have not"); *Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *6 (S.D. Fla. May 26, 2010) (denying class certification because "it is inappropriate to certify a class containing both individuals who have manifested a deficiency and those whose product has performed satisfactorily") (internal citation and quotation marks omitted); *see also, e.g.*, *Melton v.*

*Century Arms, Inc.*, No. 16-CIV-21008, 2018 WL 6980715, at *6 (S.D. Fla. Nov. 28, 2018) (recommending denial of class certification where "the record evidence fail[ed] to support Plaintiffs' contention that the Class Weapons all exhibit the Class Defect"); *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. 3d DCA 2008) (reversing class certification in FDUTPA and breach of warranty action where "the class representative . . . [sought] compensation not only for class members whose brakes have manifested a deficiency, but also for those whose brakes have performed satisfactorily[,]" explaining that "[i]n certifying the class, the trial court deviated from the majority of jurisdictions, which consistently have denied class recovery on the type of theory the class representative presses in this case.").[9]

### B. Identification of Class Members

It is Plaintiffs' burden to "propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015). Plaintiffs propose identifying class members through Point Blank's sales records. Pls. Opp. at 8. However, "[a] plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948. Point Blank points out that its sales records are only complete as to

---

[9] Plaintiffs rely on *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-CIV-61166, 2011 WL 1833366, (S.D. Fla. May 13, 2011), for the proposition that under FDUTPA "the injury occurred at the time of sale, not at failure." Pls. Opp. at 7. While correct, this misses the point—there must be *an injury*. In *Toyobo Am.*, the court explained that, unlike here, the product "was unusable" at the time of sale. 2011 WL 1833366, at *6. Similarly, Plaintiffs cite *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015), for the proposition that purchasers' varied usage of a product is irrelevant to ascertainability. Pls. Opp. at 7. However, in *Sanchez-Knutson*, the court merely explained that it need not consider varied usage because, unlike here, the plaintiff offered evidence from which a jury "could find that the alleged defect was manifested when the [product] came off the assembly line, *regardless of whether [] every putative class member has [used the product] in such a way that caused [the alleged defect].*" 310 F.R.D. at 535 (emphasis added). In other words, there was evidence to show that the alleged defect was uniform and experienced by all purchasers at the time of sale, regardless of the effect of each putative class members' individual use. Plaintiffs have not offered the same here as the alleged defect requires demonstrating the effect of each putative class member's use of the vests in question.

distributors because it sells almost exclusively to distributors, not individual purchasers.  Opp. at 24.  Upon review of these records, it is immediately apparent (on the first page, in fact) that while they do contain the names of some individual purchasers, there are many entries that do not.  *See* Spreadsheet of Point Blank's Sales Records [ECF No. 182-5] at 1.[10]  Clearly, these records alone will not suffice.  *Karhu*, 621 F. App'x at 949 (affirming denial of class certification where defendant's "sales data identified mostly third-party retailers, not class members").  To address this problem, Plaintiffs propose to use distributors' records and self-identification affidavits in conjunction with Point Blank's sales records.  Reply at 3–4.  Neither provides an adequate solution in this case.

First, Plaintiffs have submitted a single page of records from only one of Point Blank's numerous distributors.  Pls. Opp., Ex. 7 [ECF No. 182-7].  This is inadequate to show that Point Blank's distributors' data is available and complete.  *See Melton*, 2018 WL 6980715, at *6 ("Plaintiffs have not shown that the customer lists that constitute the basis for their plan of class membership identification in fact exist, or what data has been maintained by the subject distributors, as is their burden.").  Second, Plaintiffs have failed to show that self-identification affidavits would be appropriate in this case.  For support, Plaintiffs rely on *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-CIV-90011, 2018 WL 3198552 (11th Cir. June 29, 2018) and *Reyes v. BCA Fin. Servs., Inc.*, No. 16-CIV-24077, 2018 WL 3145807 (S.D. Fla. June 26, 2018).  Both are inapposite.

In *Ocwen*, the court explained that "prospective class members could self-identify" because, unlike here, the defendant "could then verify (or contest) each one by consulting its own records."  2018 WL 3198552, at *4.  The court specifically noted that the defendant possessed

---

[10]  It is also worth noting that these records only go back to 2013, yet Plaintiffs' proposed OSTA Warranty Class begins on December 16, 2012.  Mot. at 1–2.

such records.  *Id.* at *4 n.1.  Here, as discussed above, Point Blank does not since its records are only complete as to its distributors.  Likewise, in *Reyes*, the court allowed self-identification affidavits because the defendant's records were complete as to the universe of potential class members and the affidavits would be used to narrow, not expand, class membership.  2018 WL 3145807, at *14.  The critical point in both cases is that the defendant had the means to challenge a person falsely claiming to be part of the class.

Plaintiffs simply have not proposed a feasible method of identifying the class given Point Blank's incomplete records.  To be clear, the Court "is cognizant of the duality of this argument—a defendant could simply avoid having to defend a class action complaint by failing to keep, or at least feigning to keep, records adequate to identify putative members of the class."  *Harris*, 2016 WL 4543108, at *7.  But the Court "also recognizes that the burden of establishing the requirements to class certification rests squarely with Plaintiffs."  *Id.*  Considering the specific injuries alleged here and the concomitant factual determinations necessary to certify the putative class, Plaintiffs have simply failed to carry their burden.

These identification issues would undeniably be compounded by narrowing the class definition to include only those purchasers who shear the SSBS straps.  Identifying class members would necessarily involve either individual testimony as to use or an examination of each vest.  This would not be logistically feasible.  *See, e.g.*, *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 478 (S.D. Fla. 2006) (denying class certification where "individual investigations or testimony [would] . . . be necessary" to identify class members).

Because courts have been reluctant to certify classes that compensate both those who have experienced product failures as well as those who have not, and because Plaintiffs have failed to provide a sufficiently feasible mechanism for identifying members of the class, the ascertainability

factor weighs strongly against certification of the proposed class. Nor is the Court willing to allow amendment of the class definition given the remaining deficiencies discussed below.

### III. Rule 23(a) Requirements

Plaintiffs' failure to meet Rule 23's ascertainability requirement is fatal to their bid for class certification. In the interest of completeness, the Court will also analyze the remaining Rule 23 requirements, beginning with Rule 23(a). Plaintiffs satisfy numerosity, typicality, and adequacy. Commonality is addressed alongside the Court's analysis of Rule 23(b)(3)'s predominance requirement.

#### A. Numerosity

Under Rule 23(a)(1), Plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Vega*, 564 F.3d at 1267 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 2009)). Rule 23(a)(1) imposes a "generally low hurdle." *Id.* "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citations and quotations omitted).

Point Blank does not dispute numerosity, as it has sold "more than 550,000" SSBS vests since 2013. Opp. at 6. Plaintiffs have shown that their purported class of purchasers is so numerous that joinder of all members is impracticable.

#### B. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of

absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citation omitted).  To demonstrate typicality, the plaintiff must establish that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).  Put another way, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  Thus, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Prado-Steiman*, 221 F.3d at 1279 n.14 (internal quotation and citation omitted).

Point Blank asserts that Plaintiffs' claims are not typical because they are subject to unique defenses.  Opp. at 26–27.  Specifically, Point Blank intends to show that Plaintiffs suffered no economic harm because they purchased their vests with a stipend from their agency.  *Id.* at 27.  Additionally, Point Blank intends to show that Plaintiffs have violated the warranty by, for example, altering the vest.  *Id.*  These are not unique defenses; they could apply to any potential class member.  Whether these defenses involve individual determinations that would predominate over common questions is a distinct inquiry discussed below.  *See infra* Section IV.B.  Thus, the Court finds that Plaintiffs satisfy the "permissive" typicality standard.  *See, e.g.*, *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 695 (S.D. Fla. 2016) (finding typicality "easily met" where all plaintiffs purchased the allegedly defective product).

### C. Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed R. Civ. P. 23(a)(4).  "The adequacy-of-representation

requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).  In addition, plaintiff's counsel must be "qualified, experienced, and generally able to conduct the proposed litigation." *Bowe v. Pub. Storage*, 318 F.R.D. 160, 172 (S.D. Fla. 2015) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)).

Point Blank contends that Plaintiffs are not adequate representatives for three reasons: 1) Plaintiffs did not alert their agencies or other officers to what they purport to be a safety issue; 2) in their Motion, Plaintiffs have dramatically reduced the alleged damages; and 3) Plaintiffs attempt to represent other unions and government agencies which, as Point Blank argues, they have no right to represent.  Opp. at 28–29.  None of these warrant a finding that Plaintiffs are inadequate representatives.

First, Plaintiffs dispute Point Blank's suggestion that they have taken no steps to warn class members of the potential safety issue.  Pls. Opp. at 13.  According to Plaintiffs, they filed the present action "to do just that." *Id.*  Additionally, Plaintiffs argue that Point Blank's "cease and desist threats" prevented communications about the potential case. *Id.*  Finally, Plaintiffs note that Plaintiff OSTA did send a letter to its membership on June 15, 2018, after Point Blank produced its list of SSBS sales. *Id.*  Ultimately, the legal claims here are simply that class members were allegedly deceived by Point Blank and purchased an allegedly defective product.  Plaintiffs have demonstrated that they can vigorously prosecute such claims.  They have actively participated by submitting declarations and appearing for depositions.  Plaintiffs have also retained competent and experienced counsel.

Second, Plaintiffs have not "create[d] an intra-class conflict" by reducing the amount of alleged damages.  Opp. at 29.  It is true that Plaintiffs' Complaint alleges that damages amount to the full purchase price of an SSBS vest, Compl. ¶ 71, while their Motion indicates that the proper measure of damages amounts to the cost of a non-SSBS carrier, Mot. at 45.  Nonetheless, as Point Blank acknowledges, if Plaintiffs were to prevail on their claims, damages would be calculated according to statute and well-settled case law.  *Id.* at 54.  And, if there are potential class members who would like to seek the entire purchase price under another theory, they could opt-out of the class.

Similarly, to Point Blank's third challenge, Plaintiffs argue that "[s]hould the Court certify Plaintiffs' Classes, notice will be sent, at which time state agencies, through state attorneys general or other authorized representatives, will determine whether to remain in the Classes or to opt-out." Reply at 5.  The Court agrees.  Accordingly, Plaintiffs have shown that they and their counsel would adequately represent the proposed classes.

### IV.  Rule 23(b)

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs must meet one of the alternative requirements set forth in Rule 23(b).  Despite Plaintiffs' satisfactory showing under the former, they are unable to meet their burden under the latter.  Plaintiffs seek class certification under both Rule 23(b)(2) and Rule 23(b)(3), but neither is appropriate here.

#### A.  Rule 23(b)(2)

A class may be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  *AA Suncoast Chiropractic Clinic, P.A. v.*

*Progressive Am. Ins. Co.*, 938 F.3d 1170, 1179 (11th Cir. 2019) (internal citation omitted). "Monetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (citation omitted) (emphasis in original). "Courts have found relief to be predominantly related to money damages when the operative consumer protection statute provides for monetary damages as the appropriate relief." *Harris*, 2016 WL 4543108, at *11 (collecting cases).

Plaintiffs argue that certification under Rule 23(b)(2) is appropriate for their purported FDUTPA class because they "seek an order from the Court that, among other things, would require [Point Blank] to notify Class members of the defects and safety risks with the SSBS and to cease selling defective SSBS Vests (or at minimum until such notice is provided)." Mot. at 49. While such relief would be declaratory or injunctive in nature, Point Blank counters that "damages are the primary relief sought" and the "claim for injunctive relief is also really the foundation for damages." Opp. at 63. The Court agrees with Point Blank.

The operative consumer statute here, FDUTPA, provides for both injunctive or declaratory relief and monetary damages, which Plaintiffs seek. *See* Fla. Stat. § 501.211(1)–(2). Essentially, Plaintiffs claim that class members were harmed when they paid for an allegedly defective product. The appropriate and predominant form of relief for such harm would be monetary damages. *See, e.g.*, *Harris*, 2016 WL 4543108, at *11 (finding monetary relief sought under FDUTPA is not "merely incidental" to injunctive relief when a plaintiff aims "to recover damages based upon the amount each individual class member paid for a defective product"). Plaintiffs' request for an order that would require Point Blank "to notify Class members of the defects and safety risks" and "to cease selling defective SSBS Vests" would simply lay the groundwork for these monetary damages.

This is precisely the sort of tactic the Eleventh Circuit has cautioned against.  *See AA Suncoast*, 938 F.3d at 1179 (reversing district court's Rule 23(b)(2) certification and explaining that "an action seeking a declaration concerning the defendant's conduct that appears designed simply to lay the basis for a damage award rather than injunctive relief would not qualify under Rule 23(b)(2)") (internal quotation and citation omitted); *see also Karhu v. Vital Pharm., Inc.*, No. 13-CIV-60768-CIV, 2014 WL 815253, at * 11 (S.D. Fla. Mar. 3, 2014), *aff'd*, 621 F. App'x 945 (11th Cir. 2015) (holding that plaintiff had not presented a proper Rule 23(b)(2) action, when seeking monetary and injunctive relief for breach of warranty, unjust enrichment, and violation of FDUTPA, and noting that "the injunctive relief [plaintiff] requests takes a back seat to the apparent principal aim of the lawsuit: to recover damages based on the amount each individual class member paid for an ineffective product"); *PB Prop. Mgmt., Inc v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-HES-JBT, 2016 WL 7666179, at *28 (M.D. Fla. May 12, 2016) (denying Rule 23(b)(2) certification where "[t]he proposed injunctive relief class seem[ed] to be disguising a true request for future, individualized monetary payouts").

Further, as discussed below, there exist many individualized issues as to liability and damages.  These issues highlight that the monetary relief sought is not merely incidental, which also precludes Rule 23(b)(2) certification.  *See Murray*, 244 F.3d at 812 ("Liability for incidental damages should not . . . entail complex individualized determinations.") (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1982)); *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 682 (S.D. Fla. 2007) ("Money damages are incidental only when class members would be automatically entitled to them once class-wide liability is established.") (citations and quotations omitted).

Finally, "[w]hile 23(b)(2) class actions have no predominance . . . requirements, it is well established that the class claims must be cohesive."  *Murray*, 244 F.3d at 811 (quoting *Barnes v.*

*Am. Tobacco Co.*, 161 F.3d 127, 143 (3rd Cir. 1998)).  Here, the proposed class contains many members who have not experienced the alleged defect.  *See supra* Section II.A.  Thus, the class "lack[s] the class cohesiveness that distinguishes (b)(2) from (b)(3) actions."  *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 696 (S.D. Fla. 2001) (denying Rule 23(b)(2) certification where the "[p]laintiff and the putative class [were] neither bound together by a legal relationship [n]or a significant common trait").

### B. Rule 23(b)(3) Predominance and Rule 23(a)(2) Commonality

Plaintiffs' claims fare no better under Rule 23(b)(3).  "Because there is considerable overlap between Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement, courts often address them together."  *Justice*, 318 F.R.D. at 695 n.4.  Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  As with numerosity, the Eleventh Circuit has described the commonality requirement as a "low hurdle" or a "light" burden, as commonality "does not require that all questions of law and fact raised be common."  *Alhassid v. Bank of Am., N.A.,* 307 F.R.D. 684, 696 (S.D. Fla. 2015) *(quoting Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1356 (11th Cir. 2009); *Vega*, 564 F.3d at 1268).  The Supreme Court has held that the commonality inquiry requires the plaintiff to demonstrate that the class members "have suffered the same injury."  *Dukes*, 564 U.S. at 350 (citation omitted).  Additionally, the court must take into account whether certification of the class will "generate common *answers* apt to drive the resolution of the litigation."  *Id* (emphasis in original).

Though similar to the commonality requirement under Rule 23(a)(2), predominance is "far more demanding."  *Vega*, 564 F.3d at 1270.  Rule 23(b)(3) requires a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they have a *direct impact* on every class member's effort to establish liability *that is more substantial than the impact of any individualized issues* in resolving the claims of each class member." *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (emphasis in original) (quoting *Vega*, F.3d at 1270).

However, common issues do not predominate over individual questions if "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009). Courts typically "focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs. of Fla.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003). To conduct this inquiry, courts "must take into account the claims, defenses, relevant facts, and applicable substantive law[.]" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (internal quotation and citation omitted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). "Because predominance relates to individual issues regarding liability, the elements of the underlying cause of action are critical." *Harris*, 2016 WL 4543108, at *12.

Plaintiffs assert that common questions predominate and that their claims do not depend on any individualized issues. However, upon thorough review of the claims, defenses, relevant facts, and applicable substantive law, it is clear that individualized issues do in fact predominate in each of Plaintiffs' claims.

### i. FDUTPA Claim[11]

To establish a FDUTPA claim, a plaintiff must show: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *12 Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla.

---

[11] This analysis assumes, without deciding, that FDUTPA could be applied to purchasers outside of Florida.

1st DCA 2012) (quoting *Kia Motors*, 985 So. 2d at 1140).  Individualized issues predominate as to the first and third elements.

Point Blank asserts that Plaintiffs cannot show class-wide evidence of a deceptive act because they cannot prove the existence of a uniform defect.  Opp. at 42–43.  As the Court explained in detail above, Plaintiffs cannot show a uniform defect because the record demonstrates that the alleged defect does not exist at the time of sale and is dependent upon use.  *See supra* Section II.A.  Therefore, Plaintiffs cannot show class-wide evidence of a deceptive act.  *PB Prop. Mgmt.*, 2016 WL 7666179, at *27 ("if there is no generalized proof available to demonstrate the existence of a uniform defect, there can be no general evidence of a deceptive practice"); *Breakstone*, 2010 WL 2164440, at *5 ("the requirement that [a plaintiff] show an actionable defect also exists under FDUTPA").

Next, Point Blank asserts that Plaintiffs' damages model is insufficient to calculate class-wide damages.  Opp. at 53–54.  "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered . . ."  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (quoting *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984)).  This measure is also referred to as the "price premium."  *Id.* at 989.  Curiously, Plaintiffs' damages expert, Dr. Sharp, did not measure the market value:

> Q.  Did you make any attempt to determine the actual market value of SSBS vests?
> A.  No.
> Q.  Did you make any attempt to determine the market value of SSBS vests without the alleged defect?
> A.  No, not *per se*, no.
> Q.  Did you make any attempt to determine the market value of the SSBS vests with the alleged defect and a disclosure of the alleged defect?
> A.  No.

Sharp. Dep. [ECF No. 201-37] at 83:1–12.  Nor did Dr. Sharp calculate a price premium:

> Q.  Did you attempt to determine the price premium for the SSBS components in the vest or any factors that go into a price premium analysis?
> A.  No.  I mean, I've done that type of analysis in other cases, and I -- I don't think that that would be applicable here.  The answer is no.

*Id.* at 86:2–9.

Instead, Dr. Sharp proposes to "eliminate" the SSBS feature and compensate each class member with the value of Point Blank's "non-SSBS concealable Python carrier."  Sharp Report ¶ 19.  According to Dr. Sharp, "[t]his methodology would provide class members with funds that could be used to procure, if they so choose, non-SSBS replacement carriers from [Point Blank] for use with the . . . ballistic panels they already have."  *Id.* ¶ 20.  Essentially, Dr. Sharp has calculated repair costs.  However, this presents a fatal issue—it is well-accepted that FDUTPA does not cover repair costs.  *Kia Motors*, 985 So. 2d at 1140 ("FDUPTA 'actual damages' do not include consequential damages, such as repair damages or resale damages"); *see also PB Prop. Mgmt.*, 2016 WL 7666179, at *21 (citing *Kia Motors* and rejecting class certification for claims under FDUPTA because plaintiffs sought damages for having to repair or replace the allegedly defective product).  Without demonstrating that it is possible to calculate the market value of an allegedly defective SSBS vest, Dr. Sharp's report reflects an insufficient calculation of class-wide FDUTPA damages.

This problem notwithstanding, the Court is skeptical that any damages methodology would not be consumed by individual issues in this case.  Calculating the market value of what class members received would likely require individualized determinations.  As Plaintiffs' previous expert acknowledged, if the alleged defect manifests, it could do so at any point during the life of the SSBS vest.  *See* Price Dep. [ECF No. 201-29] at 276:8–11, 15–17 ("[Failure] could happen in the first 30 days of owning the vest.  It could happen within 18 months of owning the vest. . . . Q. Or it cannot happen at all, right?  A. It may not happen at all.").  Surely, a vest that will function

without issue for 18 months has a higher market value than a vest that functions for a mere 30 days.  Nevertheless, it is Plaintiffs' burden to demonstrate that damages are calculable on a class-wide basis, not the Court's.  *See, e.g.*, *Harris*, 2016 WL 4543108, at *16 (denying class certification and expressing "hesitancy" where "the proposed damages model . . . requires individualized proof and calculation").

### ii. Breach of Express Warranty and Implied Warranty of Merchantability Claims

Plaintiffs "acknowledge that the laws of each Plaintiff and OSTA Warranty Class member's home state will apply to their warranty claims."  Mot. at 38.  Plaintiffs argue, however, that "there are no substantial conflicts among the laws of the 13 at-issue states."  *Id.* at 38, 42.  Even assuming this is true, Plaintiffs' warranty claims will be overrun by individualized issues.  By way of a representative example, the Court will use the law of Plaintiffs' home state of Ohio.

"To establish a claim for breach of express warranty under Ohio law [which has adopted the U.C.C.], a plaintiff must show that: (1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided the defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a result of the defect."  *Caterpillar Fin. Servs. v. Harold Tatman & Son's Ents., Inc.*, 50 N.E.3d 955, 960 (Ohio Ct. App. 2015) (citation omitted).  "To prevail on an implied warranty in tort claim under Ohio law, a plaintiff must prove: (1) a defect existed in a defendant's product which made it unfit for its ordinary, intended use; (2) the defect existed at the time the product left the defendant's possession; and (3) the defect was the proximate cause of the plaintiff's injuries."  *In re Porsche Cars N. Am., Inc.*, 880 F.Supp.2d 801, 867 (S.D. Ohio 2012) (citing *White v. DePuy, Inc.*, 718 N.E.2d 450, 456 (Ohio Ct. App. 1998)).  Both claims require Plaintiffs to prove a defect (or failure) and causation, neither of which Plaintiffs can do on a class-wide basis.

Again, Plaintiffs cannot show a uniform defect because the record demonstrates that the alleged defect does not exist at the time of sale and is dependent upon use.  *See supra* Section II.A. As to causation, regardless of how Plaintiffs define the class, for any class members whose SSBS straps actually failed, individualized issues will predominate.  For example, Plaintiffs attach Point Blank's Care and Maintenance Manual for the SSBS vests, which contains detailed instructions on how a user must clean and store his/her SSBS vest to avoid issues.  *See* Point Blank's Care and Maintenance Manual [ECF No. 161-48] at 16, 18.  The Manual also contains the express warranty, which unambiguously states that it is "void" if the vest is "altered or modified in any way other than Point Blank Enterprises authorized factory alterations[,]" or if damage is a result of abuse, misuse, improper storage, or improper maintenance.  *Id.* at 10.  Moreover, according to the U.S. Department of Justice's Body Armor Guide, something as simple as "dust/sand can impact hook and loop" material.  *See* U.S. Department of Justice: Body Armor Guide [ECF No. 201-17] at 22. To be sure, Point Blank has made clear that it intends "to show that any problem was not caused by any alleged defect, but by individual usage."  Opp. at 36.[12]  Under these facts, causation will be a highly individualized inquiry that will predominate over any common questions.

Thus, Plaintiffs have failed to demonstrate that their warranty claims are suited for Rule 23(b)(3) certification.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) ("It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification."); *see also PB Prop. Mgmt.*, 2016 WL 7666179, at *27 (denying class certification, explaining that "[e]ven if Plaintiffs could produce evidence that [defendant's] [product] contain[ed] a common defect[,] . . . the question of whether and why a particular

---

[12]  Plaintiffs respond that "improper usage, storage, or cleaning, are not pertinent inquiries," Pls. Opp. at 17, but this Court is required to consider defenses at class certification.  *See Dukes*, 564 U.S. at 367.

[product] failed are individual questions that will be unique to each class member and would overwhelm the litigation"); *Breakstone*, 2010 WL 2164440, at *6 (denying class certification, explaining that "[e]ven where engines did manifest problems, there would be individual issues as to whether the problems were caused by the allegedly defective design and whether remedial steps taken by [defendant] (such as repairs provided) had fixed the problem."); *Kia Motors*, 985 So. 2d at 1140 (reversing class certification because "[w]ithout individual inquiry, there is no way in adjudicating this case to determine whether the need for a particular repair was based on normal wear, a defective original part, . . . environmental factors, . . . the presence of foreign objects in the [allegedly defective part], the failure of parts other than the [allegedly defective part], . . . or individual [usage].").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that this case is not appropriate for class certification and amendment would be futile.  Without class certification, Plaintiffs are left with their individual claims arising out of their own purchases.  The Court does not have jurisdiction over these claims.  In the Complaint, Plaintiffs allege that the Court has jurisdiction pursuant to 28 U.S.C. section 1332(d)(2) and that the amount in controversy exceeds $5,000,000.  OSTA Compl. ¶ 59.  Section 1332(d)(2) provides for jurisdiction over class actions.  Given that the Court has denied Plaintiffs' Motion to Certify, the action is no longer subject to jurisdiction under section 1332(d)(2).

As to diversity jurisdiction under section 1332(a), complete diversity is present, but there is no plausible allegation in the Complaint that the amount in controversy exceeds $75,000.  *See* Compl. ¶ 172 (alleging "the amount which may be potentially recovered by individual members of the Class -- up to approximately $700, representing the average purchase price of an SSBS Vest").  Accordingly, the Court lacks jurisdiction under section 1332(a).

Lastly, as the Court did in the Prior Action, the Court declines to entertain supplemental jurisdiction over the claims. *See Ohio State Troopers*, 347 F. Supp. 3d at 1231; *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (explaining that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial"). Since the Court is "powerless to act beyond its statutory grant of subject matter jurisdiction," *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001), it must dismiss the action. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Walewski*, 502 F. App'x at 862 ("We affirm the dismissal on the grounds that absent certification as a class action, the district court lacks subject matter jurisdiction over [Plaintiff's] individual claim."); *Karhu*, 2014 WL 1274119, at *3 (dismissing case for lack of subject matter jurisdiction under § 1332(d) after denying motion for class certification). Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification [ECF No. 159] is **DENIED** and Point Blank's Motion to Deny Class Certification [ECF No. 75] is **GRANTED**. Further, the Court finds that amendment would be futile. In the absence of class certification, the Court is without jurisdiction and the action is therefore **DISMISSED without prejudice**. The Clerk is directed to **CLOSE** the case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 24th day of August, 2020.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**